PEOPLE v WHITE

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—DOUBLE JEOPARDY CLAUSE.

   The Michigan Double Jeopardy Clause is substantially identical
   to the Double Jeopardy Clause of the Fifth Amendment (US
   Const, Am V; Const 1963, art 1, § 15).

2. CRIMINAL LAW—SAME TRANSACTION TEST—CONSTITUTIONAL LAW—
      DOUBLE JEOPARDY.

   The same transaction test provides the only meaningful approach
   to the constitutional protection against being placed twice in
   jeopardy where the crimes were committed in a continuous
   time sequence and display a single intent and goal—sexual
   intercourse with the complainant.

3. COURTS—SUPREME COURT—CONSTITUTIONAL LAW—SAME TRANSAC-
      TION TEST.

   The Michigan Supreme Court's duty is to assure to all who come
   before it the rights guaranteed under the Constitution of the
   United States and the Constitution of the State of Michigan;
   therefore, it adopts the same transaction test which requires
   the prosecution, except in most limited circumstances, to join at
   one trial all the charges against a defendant that grow out of a

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 332.
[2–4] 21 Am Jur 2d, Criminal Law §§ 182, 183, 188, 481.
[5] 21 Am Jur 2d, Criminal Law § 217.
[6] 21 Am Jur 2d, Criminal Law § 8.
[7] 21 Am Jur 2d, Criminal Law § 533.
[8] 21 Am Jur 2d, Criminal Law §§ 376–389, 394, 495.
[9, 11] 20 Am Jur 2d, Courts §§ 26, 103.
[10, 12] 20 Am Jur 2d, Courts § 51.
[13] 21 Am Jur 2d, Criminal Law § 381.
[14] 21 Am Jur 2d, Criminal Law §§ 182, 189.
[15, 16] 41 Am Jur 2d, Indictments and Information §§ 221–225.
[17] 40 Am Jur 2d, Homicide §§ 183–196.
[18] 21 Am Jur 2d, Criminal Law §§ 183, 184, 188, 189, 481.
[19] 65 Am Jur 2d, Rape §§ 20–24.

single criminal act, occurrence, episode, or transaction and should overrule *People v Grimmett,* 388 Mich 590 (1972), to the extent that it is inconsistent with today's opinion.

4. CRIMINAL LAW—SAME TRANSACTION TEST.

A basic reason for adopting the same transaction test which requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction is to prevent harassment of a defendant.

5. CRIMINAL LAW—SAME TRANSACTION TEST—ACTION—COURT RULES —COLLATERAL ESTOPPEL—RES JUDICATA.

The equivalent of the same transaction test which requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction has long been the standard applied to civil actions in Michigan through a court rule and the doctrines of collateral estoppel and res judicata (GCR 1963, 203.1).

6. CRIMINAL LAW—MULTIPLE CRIMES—SAME TRANSACTION—MULTIPLE PROSECUTIONS.

A defendant could not be tried twice for separate offenses of a multiple crime, if the same transaction test which requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction does apply, where the crimes were committed in a continuous time sequence and display a single intent and goal—sexual intercourse with the complainant.

7. CRIMINAL LAW—SENTENCING—JUDGES—DISTRICT AND PROSECUTING ATTORNEYS—CONSTITUTIONAL LAW.

Sentencing a defendant was the duty of the trial judge and not the prosecutor; harassment of a defendant by the prosecutor bringing a second charge against the defendant because he was unhappy with the sentence defendant received on a kidnapping charge is prohibited (MCLA 769.1).

8. CRIMINAL LAW—STATUTES—JURISDICTION—SAME TRANSACTION TEST.

There is no conflict between the legislative statutes creating jurisdiction and the adoption of the same transaction test which requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant

that grow out of a single criminal act, occurrence, episode, or transaction.

9. KIDNAPPING—JURISDICTION—RECORDER'S COURT—RAPE.

Kidnapping statute did not require the prosecutor to bring charges against a defendant in two separate jurisdictions; he was permitted to combine the kidnap charge with the rape charge and prosecute defendant in Recorder's Court for the City of Detroit for both charges (MCLA 750.349, 750.520).

10. COURTS—RECORDER'S COURT—JURISDICTION—CRIMINAL LAW—STATUTES—COUNTIES.

The Recorder's Court of the City of Detroit is a unique jurisdictional unit within Michigan's unified judicial system; its jurisdiction is specified in a statute and this jurisdiction has been construed to be equal in scope to that of the circuit courts with respect to the state's criminal laws; thus, when reference is made in a criminal statute to a county for jurisdictional purposes, the inference is created that the term county in this context includes the jurisdiction of the recorder's court, if this were not so, the recorder's court would not in reality be a court of equal stature to a county circuit court (MCLA 726.1 *et seq.*).

11. KIDNAPPING—COURTS—RECORDER'S COURT.

To the extent that the Michigan kidnapping statute allows prosecution for its described offenses " * * * either in the county in which the same may have been committed or in any county in or through which the person so seized, taken, inveigled, kidnaped or whose services shall be sold or transferred, shall have been taken, confined, held, carried or brought * * * " it must be deemed to allow such prosecution either in the county circuit court or in the Recorder's Court of the City of Detroit (MCLA 750.349).

12. COURTS—RECORDER'S COURT—LEGISLATURE—COUNTIES.

The Legislature intended the Recorder's Court of the City of Detroit to have integrity as a separate judicial unit within Michigan's unified court system and unless there is a specific statutory provision to the contrary, the recorder's court is not divested of its separate identity by the general reference to "county" in a statute.

13. CRIMINAL LAW—STATUTES—KIDNAPPING—FELONY—TRIAL—COUNTIES—JURISDICTION—SAME TRANSACTION.

Under a statute providing that the offense of kidnapping may be tried either in the county in which the same may have been committed or any other county in or through which the kidnap-

ped person shall have been taken, confined, held, carried or brought and a statute providing that whenever a felony consists or is the culmination of two or more acts done in the perpetration thereof it may be prosecuted in any county in which any one of said acts is committed, the prosecutor could have brought the charges of rape, felonious assault and kidnapping against the defendant in a single forum; there is no conflict between the adoption of the same transaction test, which requires the prosecution, except in most limited circumstances, to join at one trial all the charges against the defendant that grow out of a single criminal act, occurrence, episode, or transaction, and those statutes (MCLA 750.349, 762.8).

### DISSENTING OPINION

### T. E. BRENNAN and M. S. COLEMAN JJ.

14. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION TEST—SAME OFFENSE—WORDS AND PHRASES.

*Adoption of a "same transaction" test to define the constitutional protection against double jeopardy for the "same offense" is improper because the word* transaction *is broader than the word* offense *and a single transaction may encompass more than one offense.*

15. INDICTMENT AND INFORMATION—JOINDER OF CHARGES—SEPARATE COUNTS—OFFENSES—SAME TRANSACTION—SEPARATE PROSECUTIONS—DISTRICT AND PROSECUTING ATTORNEYS—DOUBLE JEOPARDY.

*Adoption of a court rule requiring joinder of charges which mandatory joinder would simply require the people to include, as separate counts in a single information, all known offenses chargeable against the defendant and arising out of the same transaction or event would overcome the danger of the evil attendant upon permitting a prosecuting attorney to pursue or discontinue separate prosecutions, depending upon whether he may be satisfied or dissatisfied with the outcome of other cases; there is a great deal of difference between mandatory joinder and double jeopardy.*

16. INDICTMENT AND INFORMATION—OFFENSES—SAME TRANSACTION—SEPARATE COUNTS—SEVERANCE OF COUNTS—DISCRETION—PREJUDICE.

*Requiring the people to include, as separate counts in a single information, all known offenses chargeable against the defendant and arising out of the same transaction or event by manda-*

*tory joinder merely expedites the administration of justice and relieves the defendant of the burden of defending upon a series of individual prosecutions; since it does not rise to the dignity of a rule of constitutional law, it is possible to permit the severance of counts for trial, in the discretion of the trial court, where desirable to assure orderly presentation of proofs and avoid jury confusion and, where the prosecutor would be required to join related offenses by a mandatory joinder court rule, it is entirely consistent to permit the defendant a right to demand severance whenever he feels prejudiced by a multi-count information.*

17. HOMICIDE—MURDER—MANSLAUGHTER—SAME OFFENSE—DOUBLE JEOPARDY.

*Murder and manslaughter of a given human being are the "same offense" within the meaning of double jeopardy protection; A cannot be tried separately for the murder and manslaughter of B and neither can he be convicted of both murder and manslaughter of the same human being.*

18. CRIMINAL LAW—DOUBLE JEOPARDY—CONVICTIONS.

*The word jeopardy in the double jeopardy clause refers to exposure to the danger of conviction and it is patently impossible for a person to be twice convicted without having been exposed to the danger of being twice convicted.*

19. RAPE—FELONIOUS ASSAULT—KIDNAPPING—SAME TRANSACTION—PROCEDURAL RULES.

*Defendant's conviction of rape and felonious assault after he was convicted of kidnapping arising from the same transaction should be affirmed where the conviction of rape and felonious assault was obtained in accordance with the procedural rules extant at the time of the proceedings in the trial court.*

Appeal from Court of Appeals, Division 1, Levin, P. J., and Holbrook and Bronson, JJ., reversing Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted March 8, 1973. (No. 13 March Term 1973, Docket No. 54,277.) Decided November 20, 1973.

41 Mich App 370 affirmed.

George White was convicted of rape and feloni-

ous assault. Defendant appealed to the Court of Appeals. Reversed. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for defendant on appeal.

Swainson, J. Complainant and defendant first met at the Windsor Race Track in Ontario, Canada. The defendant asked where complainant was going after the races and she stated that she and her two girl friends were planning on going to the Twenty Grand Club in Detroit, Michigan. Fifteen minutes after the complainant arrived in the club, defendant came over to the table where she and her two friends were seated. He spent the rest of the evening with them and at the conclusion of the show at about 2:30 a.m., the women agreed to accompany the defendant to a party. The "party" was at an after-hours drinking establishment. The women left between 3:30 and 4 a.m. and drove to the City of Inkster where complainant lived. The defendant followed them. The complainant decided to drive to her girl friend's house. The defendant continued to follow her automobile and parked his vehicle in back of that of the complainant. The complainant got out of the vehicle, and after walking halfway across the street, she was stopped by the defendant. He told her that he wanted her to go with him to Detroit and when she refused, they began to wrestle. The defendant struck her with the butt of a gun and injured her ear. He forced complainant into the back seat of the car and the

car was driven away. Two other men were in the automobile besides the defendant. During the return ride, and while within the City of Detroit, the complainant was forced to engage in sexual intercourse with the defendant.

Defendant was arraigned in Recorder's Court for the City of Detroit on February 21, 1968, for the offenses of rape and felonious assault. On February 28, 1968, he was arraigned in Inkster, Michigan, on the charge of kidnapping. On March 4, 1968, the preliminary examination was held in Detroit Recorder's Court. The preliminary examination on the charge of kidnapping was held on March 6, 1968. Defendant was bound over to the Recorder's Court on the charges of rape[1] and felonious assault.[2] He was bound over to the Wayne County Circuit Court on the charge of kidnapping.[3]

On March 21, 1969, the defendant was convicted by a jury in Wayne County Circuit Court of kidnapping. A scheduled trial on March 25, 1969 in Recorder's Court was adjourned. Thereafter, defendant was sentenced on the kidnapping charge to 5 to 15 years. No appeal was taken from this conviction.

On October 7, 1969, trial was commenced in Detroit Recorder's Court on the charges of rape and felonious assault. He was found guilty by a jury on both charges on October 9, 1969. He was sentenced on October 21, 1969, to 8 to 30 years for rape and 3 years, 9 months to 4 years for felonious assault.

The defendant appealed on the rape and felonious assault charges. The Court of Appeals reversed. The majority of the Court held that we

---

[1] MCLA 750.520; MSA 28.788.

[2] MCLA 750.82; MSA 28.277.

[3] MCLA 750.349; MSA 28.581.

should follow the same transaction test in determining double jeopardy and that since the crimes of rape, felonious assault and kidnapping were all part of the same transaction, the defendant should only have been tried once and thus, that his conviction should be reversed. 41 Mich App 370; 200 NW2d 326 (1972). We granted leave to appeal. 388 Mich 780. The prosecutor raises two issues on appeal.

(1) Whether the Court of Appeals erred in reversing defendant's conviction based on the use of the same transaction test?

(2) Whether the Court of Appeals erred in holding that statutes creating and defining the state judicial jurisdictions over criminal matters are procedural rules to be subordinated to the same transaction doctrine?

I.

The Court of Appeals found that appellant's second trial violated the constitutional protection against double jeopardy under what is known as the same transaction test. The leading authority for such an interpretation of double jeopardy is the concurring opinion of Justice Brennan in *Ashe v Swenson,* 397 US 436, 448; 90 S Ct 1189, 1197; 25 L Ed 2d 469, 478 (1970). Therein, Mr. Justice Brennan persuasively argues that the same transaction test best fulfills the Fifth Amendment guarantee that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb",[4] which is now enforceable against the states under

---

[4] The Michigan Double Jeopardy Clause is substantially identical to the Double Jeopardy Clause of the Fifth Amendment. Const 1963, art 1, § 15 states in part:

"No person shall be subject for the same offense to be twice put in jeopardy,"

*Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23
L Ed 2d 707 (1969).

"The Double Jeopardy Clause is a guarantee 'that the
State with all its resources and power [shall] not be
allowed to make repeated attempts to convict an indi-
vidual for an alleged offense, thereby subjecting him to
embarrassment, expense and ordeal and compelling
him to live in a continuing state of anxiety and
insecurity. . . . ' *Green v. United States,* 355 U.S. 184,
187 [78 S Ct 221; 2 L Ed 2d 199; 61 ALR2d 1119] (1957).
This guarantee is expressed as a prohibition against
multiple prosecutions for the 'same offence.' Although
the phrase 'same offence' appeared in most of the early
common-law articulations of the double-jeopardy princi-
ple, questions of its precise meaning rarely arose prior
to the 18th century, and by the time the Bill of Rights
was adopted it had not been authoritatively defined.

"When the common law did finally attempt a defini-
tion, in *The King v. Vandercomb,* 2 Leach 708, 720, 168
Eng. Rep. 455, 461 (Crown 1796), it adopted the 'same
evidence' test, which provided little protection from
multiple prosecution:

" '[U]nless the first indictment were such as the pris-
oner might have been convicted upon by proof of the
facts contained in the second indictment, an acquittal
on the first indictment can be no bar to the second.'
The 'same evidence' test of 'same offence' was soon
followed by a majority of American jurisdictions, but its
deficiencies are obvious. It does not enforce but virtu-
ally annuls the constitutional guarantee. For example,
where a single criminal episode involves several vic-
tims, under the 'same evidence' test a separate prosecu-
tion may be brought as to each. *E.g., State v Hoag,* 21
N. J. 496, 122 A. 2d 628 (1956), aff'd, 356 U.S. 464 [78 S
Ct 829; 2 L Ed 2d 913] (1958). The 'same evidence' test
permits multiple prosecutions where a single transac-
tion is divisible into chronologically discrete crimes. *E.g.*
*Johnson v Commonwealth,* 201 Ky. 314, 256 S. W. 388
(1923) (each of 75 poker hands a separate 'offense').
Even a single criminal act may lead to multiple prose-
cutions if it is viewed from the perspectives of different

statutes. *E.g., State v Elder,* 65 Ind. 282 (1879). Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening. And given our tradition of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a criminal prosecution, the potentialities for abuse inherent in the 'same evidence' test are simply intolerable.

"The 'same evidence' test is not constitutionally required. It was first expounded *after* the adoption of the Fifth Amendment, and, as shown in *Abbate v United States, supra,* [359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959)] at 197–198 and n. 2, has never been squarely held by this Court to be the required construction of the constitutional phrase 'same offence' in a case involving multiple trials; indeed, in that context it has been rejected. See *In re Nielsen,* 131 U.S. 176 [9 S Ct 672; 33 L Ed 118] (1889), discussed in *Abbate v United States, supra,* at 201. The 'same evidence' test may once have been defensible at English common law, which, for reasons peculiar to English criminal procedure, severely restricted the power of prosecutors to combine several charges in a single trial. In vivid contrast, American criminal procedure generally allows a prosecutor freedom, subject to judicial control, to prosecute a person at one trial for all the crimes arising out of a single criminal transaction.

"In my view, the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction. This 'same transaction' test of 'same offence' not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." 397 US 436, 450–454; 90 S Ct 1189, 1197–1199; 25 L Ed 2d 469, 479–481. (Footnotes omitted).

The United States Supreme Court has not passed upon the constitutional necessity of the same transaction test. In *Ashe v Swenson, supra,* it was not imperative under the facts of that case for the majority of the Court to reach the issue. Ashe appealed his conviction of armed robbery of one member of a poker game after he had been previously acquitted of the armed robbery of another participant in the same poker game. The nature of the evidence presented made it clear that Ashe's acquittal in the first trial resulted from the failure of the prosecution to identify Ashe as having been present at the robbery. Since the verdict of guilty at the second trial also required a finding that Ashe had been present at the robbery scene, the Court reversed the conviction under the more limited doctrine of collateral estoppel. It held that the prosecution was barred from relitigating the identification issue after that issue had clearly been decided in Ashe's favor at the first trial.

Many of our sister states' courts, however, have adopted the same transaction test as the proper standard to be applied in examining a claim of double jeopardy. *State v Richardson,* 460 SW2d 537 (Mo, 1970); *Walton v State,* 448 SW2d 690 (Tenn Crim App, 1969); *Burnam v State,* 2 Ga App 395; 58 SE 683 (1907); *State v Bell,* 205 NC 225; 171 SE 50 (1933); *State v Brown,* 262 Or 442; 497 P2d 1191 (1972); *Commonwealth v Campana,* 452 Pa 233; 304 A2d 432 (1973); see also, *Whitton v State,* 479 P2d 302 (Alas, 1970).

Other states have achieved the same result by the use of statutes prohibiting more than one trial for crimes arising out of the same transaction. *State v Corning,* 289 Minn 382; 184 NW2d 603 (1971); *Smith v State,* 486 P2d 770 (Okla Crim App, 1971); *In re Henry,* 65 Cal 2d 330; 54 Cal

Rptr 633; 420 P2d 97 (1966); NY Crim Pro L § 40.20(2) (McKinney 1971). It is also instructive to note that the United States Supreme Court has reached the same result as the same transaction test in cases involving successive prosecutions following an initial conviction. *In re Nielsen,* 131 US 176; 9 S Ct 672; 33 L Ed 118 (1889); *Petite v United States,* 361 US 529; 80 S Ct 450; 4 L Ed 2d 490 (1960).

The Pennsylvania Supreme Court in *Commonwealth v Campana, supra,* reiterated Justice Brennan's thoughts when it expressed the reasons it believed made the same transaction test the required judicial test to be applied in assessing a claim of double jeopardy.

"As countless legal scholars have noted * * * the modern age of criminal procedure has witnessed a proliferation of penal statutes. A consequence of this development is the judiciary's responsibility 'to recognize that new rules must be devised to cope with the fact that a single factual situation may today give rise to a number of substantive offenses.' Prosecutors, 'by consulting a Thesaurus,' are presently able to dissect a single criminal 'act', 'transaction', 'occurrence', 'episode' or 'circumstance', and produce a variety of criminal charges. Unless the judiciary properly meets its responsibility, a prosecutor, if he is for any reason dissatisfied with the result of the first trial, could circumvent the generally accepted prohibition against state appeals with a new set of charges for a second prosecution. Such 'trial run' prosecutions are, in Mr. Justice STEWART's words, 'precisely what the constitutional guarantee forbids.'" *[Ashe v Swenson,* 397 US 436, 447; 90 S Ct 1189, 1196; 25 L Ed 2d 469, 477] 452 Pa 242, 243; 304 A2d 436. (Footnotes omitted.)

The American Law Institute which at one time recommended the adoption of the same evidence test, now recognizes the same transaction test for

the same reasons as those expressed by the Pennsylvania Supreme Court in *Campana.* See, ALI, *Model Penal Code,* §§ 1.07, 1.08 and 1.09 and adjoining comments (Proposed Official Draft 1962). Likewise, many commentators have similarly urged the adoption of the same transaction test. See, for example, Comment, *Twice in Jeopardy,* 75 Yale LJ 262 (1965); Comment, *Ashe v Swenson: Collateral Estoppel, Double Jeopardy and Inconsistent Verdicts,* 71 Colum L Rev 321 (1971); Comment, *Double Jeopardy: Vandercomb to Chicos— Two Centuries of Judicial Failure in Search of a Standard,* 45 Journal of Urban Law 405 (1967); ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Joinder and Severance,* § 1.3 (Approved Draft, 1968).

The Court of Appeals in the present case has carefully analyzed the methods of meaningful implementation of the protection against double jeopardy and has persuaded this Court that the holding in the recent opinion of *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972) (SWAINSON, J.) must be reexamined. In *Grimmett,* we declined to adopt the same transaction test as a mandatory rule for the Michigan Court in deference to legislative action on the issue. After a thorough reexamination of the double jeopardy clause as found in case law and commentary, we have concluded that *Grimmett* did not properly weigh the constitutional dimensions of the same transaction test.[5] Under the facts of the present case, the same transaction test provides the only meaningful approach to the constitutional protection against

---

[5] In *Young v Detroit City Clerk,* 389 Mich 333, 356–357; 207 NW2d 126, 136–137 (1973), Chief Justice T. M. KAVANAGH found himself in a situation similar to that of the author of the present opinion. Remarks of the Chief Justice are adopted by this writer as a "candid admission" that the rejection of the same transaction test in *Grimmett* was improvident.

being placed twice in jeopardy. It is our duty to assure to all who come before us the rights guaranteed under the Constitution of the United States and the Constitution of the State of Michigan. We therefore adopt the same transaction test as outlined in the concurring opinion of Justice Brennan in *Ashe v Swenson, supra,*[6] and overrule *Grimmett* to the extent that it is inconsistent with today's opinion.

The use of the same transaction test in Michigan will promote the best interests of justice and sound judicial administration. In a time of overcrowded criminal dockets, prosecutors and judges should attempt to bring to trial a defendant as expeditiously and economically as possible.[7] A far more basic reason for adopting the same transaction test is to prevent harassment of a defendant.[8]

---

[6] In adopting the same transaction test, we limit our holding to the facts of the present case and to similar factual situations.

We are aware that in certain situations, strict application of the same transaction test could lead to the anomalous result of foreclosing prosecution for an offense where the state had made a diligent and good faith effort to protect the defendant's constitutional rights.

"For example, where a crime is not completed or not discovered, despite diligence on the part of the police, until after the commencement of a prosecution for other crimes arising from the same transaction, an exception to the 'same transaction' rule should be made to permit a separate prosecution." *Ashe v Swenson,* 397 US 436, 453 n. 7; 90 S Ct 1189, 1199; 25 L Ed 2d 469, 481 (1970) (Brennan, J., concurring). We emphasize that our primary objective in adopting the same transaction test is to insure that a criminal defendant receives meaningful protection under the double jeopardy clause. If actual situations should arise in which application of the same transaction test would not serve that objective, we will, in such a case, consider the adoption of limited exceptions to the same transaction test.

[7] In Michigan, it is interesting to note, that prosecutors have often insisted upon trying separate offenses arising out of the same transaction at one trial and have prevailed against defense objections to such joinder. *Comparative Analysis of American Bar Association Standards for Criminal Justice with Michigan Laws, Rules and Legal Practice,* p 3-1. *See also, People v Andrus,* 331 Mich 535; 50 NW2d 310 (1951); *People v Kruper,* 340 Mich 114; 64 NW2d 629 (1954).

[8] Today's opinion does not review nor is it designed to affect the present law relating to a defendant's request for the severance of related offenses.

The joining of all charges arising out of the same criminal episode at one trial " * * * will enable a defendant to consider the matter closed and save the costs of redundant litigation." It will also help " * * * to equalize the adversary capabilities of grossly unequal litigants" and prevent prosecutorial sentence shopping. "In doing so, it recognizes that the prohibition of double jeopardy is for the defendant's protection." 41 Mich App 370, 378; 200 NW2d 326, 330 (1972).

In Michigan, the equivalent of the same transaction test has long been the standard applied to civil actions through GCR 1963, 203.1 and the doctrines of collateral estoppel and res judicata. The purposes behind requiring a plaintiff to raise in one action all of his claims against a defendant that arose out of the same transaction are to conserve the state's judicial resources and to prevent harassment of the defending party. *People v Noth,* 33 Mich App 18, 40; 189 NW2d 779, 789 (1971) (LEVIN, J. dissenting). "One would think that standards as high as those applied in civil litigation * * * would be applied without hesitation in the enforcement of the constitutional right of the citizen secured by the Double Jeopardy Clause in the Bill of Rights." *Id.*

There can be no doubt that the three crimes committed by defendant were all part of a single criminal transaction. The crimes were committed in a continuous time sequence and display a single intent and goal—sexual intercourse with the complainant. Indeed, there is no serious argument that under the same transaction test defendant's second trial was improper and the resulting convictions on the charges of rape and felonious assault must be reversed.[9]

---

[9] At oral argument, the prosecutor conceded the one reason for

## II.

The prosecutor contends that if we adopt the reasoning of the Court of Appeals, we are treating statutes creating and defining jurisdiction over criminal matters to be mere procedural rules to be subordinated to the same transaction doctrine. He contends that the jurisdictional statutes are not mere procedural rules and therefore take precedence over the same transaction doctrine. However, we perceive no conflict between the legislative statutes creating jurisdiction and the adoption of the same transaction test.[10]

bringing the charges was because he was unhappy with the sentence defendant received on the kidnapping conviction. He stated that he waited until after the first sentence was given in circuit court before deciding to bring to trial the pending prosecution in recorder's court. Such harassment is prohibited. MCLA 769.1; MSA 28.1072 provides in part:

"The justices of the supreme court, or any of them, or any of the several circuit judges in the respective circuits, or any judge of a court of record having jurisdiction of criminal cases, in this state, are hereby authorized and empowered to pronounce judgment against and pass sentence upon all persons heretofore convicted, or that may hereafter be convicted in any court held by said justices, or judges, or any of them, for any offense heretofore committed or that may hereafter be committed against the laws of this state: * * * ."

It was the duty of the trial judge and not the prosecutor to pass sentence on the defendant. The admissions made by the prosecutor during oral argument vividly demonstrates the need for action taken today.

[10] While we do not face here a conflict between the laws creating jurisdiction and the constitutional protection against double jeopardy, we note as dicta the well-reasoned position of the Court of Appeals in the present case.

"A procedural rule allocating jurisdiction to try offenses between the several courts of the state must be subordinated to a defendant's constitutional right not to be put twice in jeopardy for the same offense. *Cf. Gouled v United States,* 255 US 298, 313; 41 S Ct 261, 266; 65 L Ed 647, 654 (1921). This state's judicial power is, under our Constitution, vested in 'one court of justice'. Const 1963, art 6, § 1. While that power is divided among several courts, all the courts are parts of the same unified judicial system. When two or more such jurisdictions may try a defendant for a criminal transaction, the first to obtain jurisdiction does so to the exclusion of the others. *People v Hanrahan,* 75 Mich 611 [42 NW 1124; 4 LRA 751] (1889). Application of the same transaction test does not prohibit separate trials where a

The statute prohibiting kidnapping in Michigan is MCLA 750.349; MSA 28.581. That statute provides in part:

"Any person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, * * * or in any way held to service against his will, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

*"Every offense mentioned in this section may be tried either in the county in which the same may have been committed or in any county in or through which the person so seized, taken, inveigled, kidnaped or whose services shall be sold or transferred, shall have been taken, confined, held, carried or brought;* * * * *."* (Emphasis added.)

Thus, the statute did not require the prosecutor to bring charges against defendant in two separate jurisdictions. He was permitted to combine the kidnap charge with the rape charge and prosecute defendant in Recorder's Court for the City of Detroit[11] for both charges.

---

defendant is involved in several criminal transactions at different times. By employing this test we allow substance to govern form and give meaning to a constitutional guarantee which cannot be ignored." *People v White,* 41 Mich App 370, 380; 200 NW2d 326, 331 (1972).

[11] The Recorder's Court of the City of Detroit is a unique jurisdictional unit within our unified judicial system. Const 1963, art 6, § 1; MCLA 726.1 *et seq.;* MSA 27.3551 *et seq.* Its jurisdiction is specified in MCLA 726.11; MSA 27.3561 and this jurisdiction has been construed to be equal in scope to that of the circuit courts with respect to the state's criminal laws. *Recorder's Court Judge v Wayne Circuit Judge,* 347 Mich 567, 571–572; 80 NW2d 481, 483 (1957); *People v Cason,* 387 Mich 586, 592–594; 198 NW2d 292, 295–296 (1972).

When reference is made in a criminal statute such as MCLA 750.349; MSA 28.581 to a county for jurisdictional purposes, the inference is created that the term county in this context includes the jurisdiction of the recorder's court. If this were not so, the recorder's court would not in reality be a court of equal stature to a county circuit court. MCLA 726.31; MSA 27.3581 specifically states:

"In all prosecutions for crimes, misdemeanors, and offenses arising

MCLA 762.8; MSA 28.851 provides:

"Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration thereof, said felony may be prosecuted in any county in which any 1 of said acts was committed."

The rape was a culmination of two or more felonies over an extended period of time. Under this statute, the prosecutor likewise could have combined both prosecutions in Detroit Recorder's Court. Thus, the Michigan statutes creating jurisdiction do not preclude the use of the same transaction test. Indeed, a fair reading of the statutes would be that by allowing flexible jurisdiction, they are encouraging the combining of the prosecution of all related offenses in a single jurisdiction. Under the present statutes, the prosecutor could have brought all of the charges against defendant in a single forum. There is no conflict between the adoption of the same transaction test and the Michigan statutes involving jurisdiction in this case.

under the laws of this state, said recorder's court shall be governed in the same manner as the circuit courts of the state are, by the general laws thereof, which, so far as the same may apply, are hereby made applicable to said recorder's court, its officers and all proceedings therein, subject to the provisions of this act."

To the extent then that MCLA 750.349; MSA 28.581 allows prosecution for its described offenses " * * * either in the county in which the same may have been committed or in any county in or through which the person so seized, taken, inveigled, kidnaped or whose services shall be sold or transferred, shall have been taken, confined, held, carried or brought * * * ", it must be deemed to allow such prosecution either in the county circuit court or in the recorder's court. No deviation is demanded from the above construction when the county happens to be Wayne County. The Legislature intended the recorder's court to have integrity as a separate judicial unit within our unified court system. Unless there is a specific statutory provision to the contrary, the recorder's court is not divested of its separate identity by the general reference to county in a statute.

The judgment of the Court of Appeals is affirmed.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.

T. E. BRENNAN, J. *(dissenting)*. I am not pleased with the adoption of a "same transaction" test to define the constitutional protection against double jeopardy for the "same offense".

Obviously, the word *transaction* is broader than the word *offense.* It is conceded by the majority that a single transaction may encompass more than one offense, and it is equally clear that the Court intends to limit the people to a single prosecution, even where separate and distinct offenses have been committed.

The reference to *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), is particularly instructive. In *Grimmett,* the defendant killed one man and wounded another during the perpetration of a felony.

By overruling *Grimmett,* the Court makes clear its conclusion that separate offenses must be prosecuted together.

The Court desires to eliminate *seriatim* prosecutions, recognizing the evil attendant upon permitting a prosecuting attorney to pursue or discontinue separate prosecutions, depending upon whether he may be satisfied or dissatisfied with the outcome of other cases.

But I submit that this danger can be overcome by the adoption of a court rule requiring joinder of charges.

There is a great deal of difference between mandatory joinder and double jeopardy.

Mandatory joinder would simply require the people to include, as separate counts in a single

information, all known offenses chargeable against the defendant and arising out of the same transaction or event.

In such a case, the defendant might be convicted of one or more of the counts and acquitted on others. He might be found guilty as charged on some counts, but guilty of lesser included offenses on others. Being separate offenses, the defendant is judged separately on each. The mandatory joinder merely expedites the administration of justice and relieves the defendant of the burden of defending upon a series of individual prosecutions.

Since mandatory joinder does not rise to the dignity of a rule of constitutional law, it is possible to permit the severance of counts for trial, in the discretion of the trial court, where desirable to assure orderly presentation of proofs and avoid jury confusion.

Similarly, where the prosecutor is required to join related offenses by a mandatory joinder court rule, it is entirely consistent to permit the defendant a right to demand severance whenever he feels prejudiced by a multicount information.

But, when the rule is stated in constitutional terms, and founded upon a broadened interpretation of double jeopardy, the Court attempts to get a square peg into a round hole.

*A* cannot be tried separately for the murder and manslaughter of *B.* Neither can he be convicted of both murder and manslaughter of the same human being. If a jury were to attempt to return such a verdict, the court could not receive it, nor pronounce judgment upon it.

Murder and manslaughter of a given human being are the "same offense" within the meaning of double jeopardy protection.

But, suppose *A* is charged in a single prosecution with the murders of *B* and *C.* Is it intended

that the jury must choose which murder to convict upon?

Certainly, if the murders of *B* and *C* are the "same offense" within the meaning of the double jeopardy clause, by reason of having been committed in the same transaction, then it is patently unconstitutional to permit the jury to return a verdict of guilty on both charges.

By definition, the defendant would stand twice convicted for the same offense.

Similarly, if the jury acquits *A* of the murder of *B,* but convicts him of the murder of *C,* how is the verdict to be received if the murders of *B* and *C* are regarded as a single offense?

It may be said that the double jeopardy clause protects against multiple prosecutions, but not against multiple convictions.

If that be true, then there would be no constitutional bar to a verdict of guilty as to both the manslaughter and the murder of a single victim.

Further, it would seem that the word jeopardy refers to exposure to the danger of conviction, and it is patently impossible for a person to be twice convicted without having been exposed to the danger of being twice convicted.

My disagreement with the majority lies not in the objective of curbing prosecutorial discretion. It is, rather, with the logic of the route chosen to achieve the objective.

While I would support an amendment to the court rules mandating joinder of related offenses, I would affirm the conviction at bar, the same having been obtained in accordance with the procedural rules extant at the time of the proceedings below.

M. S. COLEMAN, J., concurred with T. E. BRENNAN, J.

LEVIN, J., did not sit in this case.