PEOPLE v JACKSON

Docket No. 87659. Submitted April 16, 1986, at Lansing. Decided July 7, 1986.

Defendant, Anthony J. Jackson, was charged in separate informations with delivery of marijuana and possession of marijuana with intent to deliver. The facts leading to the charges against defendant are as follows. Acting on information provided to them by a confidential informant, the police set up a controlled drug buy. The informant called defendant at his house and asked him to come to 114 Morrell Street, Jackson. Defendant arrived by car at that address approximately forty-five minutes later with another man and the informant purchased two "baggies" of marijuana from defendant. Defendant and the other man then left the Morrell Street residence. The police followed defendant's car to what was later determined to be defendant's home. Upon getting out of the car, both men were placed under arrest. A search of the men produced additional marijuana. Defendant and at least two police officers then entered defendant's home. There, the officers arrested defendant's wife after observing several marijuana roaches in a living room ashtray. Four plastic bags of marijuana and one bag containing over sixty marijuana cigarettes and marked "$1.50" were observed in a bedroom. These items were subsequently seized, apparently pursuant to a search warrant. A later inventory search of defendant's car produced fifteen additional baggies of marijuana. Following his conviction on the charge of delivery the Jackson Circuit Court quashed the information charging possession with intent to deliver and dismissed the case on the ground of double jeopardy, James G. Fleming, J. The people appealed. *Held:*

Criminal charges against a defendant arise out of the same transaction and must be joined at one trial where (1) the crimes are ones of criminal intent, are committed in a continuous time

REFERENCES

Am Jur 2d, Criminal Law §§ 244, 278.

Propriety of increased punishment on new trial for same offense. 12 ALR3d 978.

sequence, and display a single criminal intent or objective, or (2) if they are not all crimes of criminal intent, they are part of the same criminal episode and violate laws intended to prevent the same or similar harm or evil, not a substantially different kind of harm or evil. The crimes of delivery and possession with intent to deliver are crimes of criminal intent. The facts do not disclose a single criminal intent or goal common to both crimes. Nor do they disclose the type of continuous time sequence contemplated by the same transaction test. The facts disclose two separate transactions.

Reversed and remanded.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The Double Jeopardy Clauses of both the United States and Michigan Constitutions protect against a second prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense (US Const, Am V; Const 1963, art 1, § 15).

2. CRIMINAL LAW — SAME TRANSACTION TEST — DOUBLE JEOPARDY.

Criminal charges against a defendant rise out of the same transaction and must be joined at one trial where (1) the crimes are ones of criminal intent, are committed in a continuous time sequence, and display a single criminal intent or objective, or (2) if they are not all crimes of criminal intent, they are part of the same criminal episode and violate laws intended to prevent the same or similar harm or evil, not a substantially different kind of harm or evil.

3. CONSTITUTIONAL LAW — CRIMINAL LAW — DOUBLE JEOPARDY — SAME TRANSACTION TEST.

The same transaction test, which is to be applied when examining a claim of double jeopardy, consists of two elements: whether the crimes were committed in a continuous time sequence, and whether the crimes display a single intent and goal; defendant must support his claim under the same transaction test by demonstrating a direct factual connection between the crimes charged, not mere temporal happenstance.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Brian E. Thiede,* Chief Appellate Attorney, for the people.

Before: ALLEN, P.J., and MacKENZIE and J. P. SWALLOW,* JJ.

MacKENZIE, J. Defendant was charged in two separate informations with delivery of marijuana and possession of marijuana with intent to deliver, MCL 333.7401, subds (1) and (2)(c); MSA 14.15(7401), subds (1) and (2)(c). Following a bench trial, he was convicted and sentenced on the delivery charge. The people appeal as of right from an order of the trial court granting defendant's motion to quash the information charging him with possession with intent to deliver and dismissing that case. The sole issue on appeal is whether prosecution of that charge is barred by the Double Jeopardy Clause of the Michigan Constitution. We conclude that it is not and reverse.

The facts of the case are not in dispute. On February 26, 1985, acting on information provided to them by a confidential informant, the police set up a controlled drug buy. The informant called defendant at his house and asked him to come to 114 Morrell Street, Jackson. Defendant arrived by car at that address approximately forty-five minutes later with another man and the informant purchased two "baggies" of marijuana from defendant. Defendant and the other man then left the Morrell Street residence.

The police followed defendant's car to what was later determined to be defendant's home. Upon their exiting from the car, both men were placed under arrest. A search of the men produced additional marijuana.

Defendant and at least two police officers then entered defendant's home. There, the officers arrested defendant's wife after observing several marijuana roaches in a living room ashtray. Four

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plastic bags of marijuana and one bag containing over sixty marijuana cigarettes and marked "$1.50" were observed in a bedroom. These items were subsequently seized, apparently pursuant to a search warrant. A later inventory search of defendant's car produced fifteen additional baggies of marijuana.

Defendant was simultaneously charged in separate informations with delivery of marijuana, predicated on the transaction at 114 Morrell Street, and possession of marijuana with intent to deliver. The delivery case was assigned to Jackson Circuit Court Judge Charles Falahee; the possession case was assigned to Jackson Circuit Court Judge James Fleming. Defendant's bench trial on the delivery charge was conducted July 3, 1985, before Judge Falahee. Apparently, the prosecution produced as an exhibit in that case the marijuana seized from defendant's home as well as that delivered by defendant to the informant. On July 11, 1985, defendant was convicted as charged.

Defendant's trial on the possession with intent to deliver charge was scheduled for an August jury trial. On July 15, 1985, however, defendant filed a motion to quash the information as to the possession offense. At a hearing on the motion, defendant argued that under Michigan law double jeopardy barred the subsequent prosecution for possession with intent to deliver, since it arose out of the same transaction as the delivery charge. By written opinion, Judge Fleming granted the motion and ordered the case dismissed.

The Double Jeopardy Clauses of both the United States and Michigan Constitutions protect against a second prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense. *People v Robideau,* 419 Mich 458, 468; 355 NW2d 592 (1984), citing

*North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). In the instant case, we are concerned with the former category of protections under the Michigan Constitution, i.e., the guarantee against multiple or successive prosecutions for the same offense.

Whereas the single prosecution—multiple punishment form of double jeopardy concerns the defendant's interest in not having more punishment imposed than intended by the Legislature, and thus involves questions of legislative intent, *Robideau, supra,* p 485, the defendant's interest in cases involving multiple or successive prosecutions is wholly different. The successive prosecution form of double jeopardy protections addresses the "right to be free from vexatious proceedings," *Robideau, supra,* p 485.

> Successive-prosecution cases involve the core values of the Double Jeopardy Clause, the common-law concepts of *autrefois acquit* and *convict.* See *Bartkus v Illinois (On Rehearing),* 359 US 121, 151; 79 S Ct 676; 3 L Ed 2d 684 (1959) (Black, J., *dissenting*). Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice "run the gauntlet," in not being subjected to "embarrassment, expense and ordeal," and in not being compelled "to live in a continuing state of anxiety and insecurity," with enhancement of the "possibility that even though innocent he may be found guilty." *Green v United States,* 355 US 184, 187, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957). [*Robideau, supra,* p 484.]

In *People v White,* 390 Mich 245; 212 NW2d 222 (1973), our Supreme Court adopted a factual "same transaction" test as the proper standard to be applied in examining a multiple prosecution claim of double jeopardy. The test is based on Justice

Brennan's concurring opinion in *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970). The following passage from Justice Brennan's opinion was quoted in *White, supra,* and sets forth the relevant considerations:

> "[The Double Jeopardy Clause] guarantee is expressed as a prohibition against multiple prosecutions for the 'same offence.' Although the phrase 'same offence' appeared in most of the early common-law articulations of the double-jeopardy principle, questions of its precise meaning rarely arose prior to the 18th century, and by the time the Bill of Rights was adopted it had not been authoritatively defined.
>
> "When the common law did finally attempt a definition, in *The King v Vandercomb,* 2 Leach 708, 720, 168 Eng Rep 455, 461 (Crown 1796), it adopted the 'same evidence' test, which provided little protection from multiple prosecution:
>
> " '[U]nless the first indictment were such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second.'
>
> "The 'same evidence' test of 'same offence' was soon followed by a majority of American jurisdictions, but its deficiencies are obvious. It does not enforce but virtually annuls the constitutional guarantee. For example, where a single criminal episode involves several victims, under the 'same evidence' test a separate prosectuion may be brought as to each. *E.g. State v Hoag,* 21 N J 496, 122 A2d 628 (1956), aff'd, 356 US 464 [78 S Ct 829; 2 L Ed 2d 913] (1958). The 'same evidence' test permits multiple prosecutions where a single transaction is divisible into chronologically discrete crimes. *E.g. Johnson v Commonwealth,* 201 Ky 314, 256 SW 388 (1923) (each of 75 poker hands a separate 'offense'). Even a single criminal act may lead to multiple prosecutions if it is viewed from the perspectives of different statutes. *E.g.,*

*State v Elder,* 65 Ind 282 (1879). Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening. And given our tradition of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a criminal prosecution, the potentialities for abuse inherent in the 'same evidence' test are simply intolerable.

"In my view, *the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction.* This "same transaction" test of "same offence" not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience. 397 US 436, 450-454; 90 S Ct 1189, 1197-1199; 25 L Ed 2d 469, 479-481. [390 Mich 253-254. Emphasis added.]

In *White,* the defendant met the complainant at a "party," followed her automobile when she left, stopped her when she exited from her car, struck her on the head, forced her into the car and drove off, and eventually forced her to engage in sexual intercourse. As in the instant case, the defendant in *White* was simultaneously charged in two informations and scheduled to defend in two separate trials. Following his conviction on charges of kidnapping, a jury convicted him of felonious assault and rape. In adopting the "same transaction" test, the Supreme Court in *White* stated:

Under the facts of the present case, the same transaction test provides the only meaningful ap-

proach to the constitutional protection against being placed twice in jeopardy.

\* \* \*

The use of the same transaction test in Michigan will promote the best interests of justice and sound judicial administration. In a time of overcrowded criminal dockets, prosecutors and judges should attempt to bring to trial a defendant as expeditiously and economically as possible. A far more basic reason for adopting the same transaction test is to prevent harassment of a defendant. The joining of all charges arising out of the same criminal episode at one trial " . . . will enable a defendant to consider the matter closed and save the costs of redundant litigation." It will also help " . . . to equalize the adversary capabilities of grossly unequal litigants" and prevent prosecutorial sentence shopping. "In doing so, it recognizes that the prohibition of double jeopardy is for the defendant's protection. 41 Mich App 370, 378; 200 NW2d 326, 330 (1972).

\* \* \*

There can be no doubt that the three crimes committed by defendant were all part of a single criminal transaction. The crimes were committed in a continuous time sequence and display a single intent and goal—sexual intercourse with the complainant. Indeed, there is no serious argument that under the same transaction test defendant's second trial was improper and the resulting convictions on the charges of rape and felonious assault must be reversed. [390 Mich 257-259.]

In *Crampton v 54-A Dist Judge,* 397 Mich 489; 245 NW2d 28 (1976), the Supreme Court examined the parameters of the same transaction test and set forth two criteria for determining whether crimes arise out of the same transaction:

1) Where criminal intent is required in the offenses involved, the criterion set forth in *White*

applies: "continuous time sequence and display [of] a single intent and goal."

2) Where one or more of the offenses does not involve criminal intent, the criterion is whether the offenses are part of the same criminal episode, and whether the offenses involve laws intended to prevent the same or similar harm or evil, not a substantially different, or a very different kind of, harm or evil. [397 Mich 501-502.]

If, under either of these criteria, all the crimes were committed in a "single transaction," they must be prosecuted in a single proceeding.

In the instant case, defendant was separately charged with delivery of marijuana and possession of marijuana with the intent to deliver. Both crimes involve criminal intent. See, e.g., *People v Elmore,* 94 Mich App 304; 288 NW2d 216 (1979), and *People v Jerry Johnson,* 68 Mich App 697; 243 NW2d 715 (1976). Thus, resolution of this case hinges on *Crampton's White* criterion: whether the crimes were committed in a continuous time sequence and displayed a single intent and goal.

Decisions applying the *White/Crampton* same transaction test have required a close, unified purpose relationship between the crimes and have demanded that the defendant support his double jeopardy claim by demonstrating a direct, factual connection, not mere temporal happenstance. *People v Charles Johnson,* 62 Mich App 240, 244; 233 NW2d 246 (1975). In *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), a case approved of by the *Crampton* Court, for example, the defendant stole a credit card from a vending machine operator during an attempt to rob a bar and was arrested when he tried to use the credit card to make a purchase three hours after the attempted robbery. The defendant pled guilty to the offense of unlawful possession of a credit card and was

later convicted of assault with intent to rob while armed. Our Supreme Court rejected his double jeopardy claim, stating:

> Although the attempted unlawful possession of a credit card charge grew out of the assault with intent to rob charge, in the sense that the credit card was taken from the vending machine operator, the assault with intent to rob and the attempted possession of a credit card were separate transactions. The Double Jeopardy Clause does not license subsequent offenses growing out of a theft or excuse the theft upon trial for one or another offense. [391 Mich 342.]

A sale of heroin was made to the same police agent by the defendant on five occasions in *People v Cuellar,* 76 Mich App 20; 255 NW2d 755 (1977), lv den 402 Mich 860 (1978). The defendant was convicted of possession with intent to deliver heroin for one sale and then convicted of the same crime for another sale. On appeal, he argued that the series of sales were part of the same transaction and all prosecutions were required to be joined in one trial pursuant to *White.* This Court disagreed:

> Leaving aside the amount of time between the two sales, the facts here do not reveal a "single intent and goal" by defendant for the July 19 and August 14 sales. Rather, each sale involved an intent by defendant to deliver different heroin. . . .
> . . . There is no evidence that defendant intended to deliver some large amount of heroin by making several small sales rather than one large sale. The July 19 and August 24 sales were independent transactions, complete in themselves, and double jeopardy provided no bar to the instant prosecution. Compare *People v Martinez,* 58 Mich

App 693; 228 NW2d 523 (1975), approved in *Crampton, supra,* at 502, fn 8. [76 Mich App 23.]

*People v Martinez, supra,* cited in *Cuellar,* involved two sales of heroin to the same undercover officer, followed by two separate prosecutions. This Court found no double jeopardy.

> The deliveries of heroin in the instant case were made to the same agent during the course of a continuous undercover investigation. But these facts alone do not relate the events intimately enough so as to characterize them as being a part of a single transaction under the test adopted in *People v White.* Nine days separated the two sales in the instant case; the amounts involved were substantially different; and the record does not disclose any connection between them, such as an agreement after the first delivery to return for another sale.
>
> We hold that the two deliveries therefore constituted separate transactions and that the defendant's plea-based conviction for the second delivery did not place him twice in jeopardy. *People v White, supra.* [58 Mich App 692.]

In *People v Charles Johnson, supra,* also approved of by the *Crampton* Court, the defendant escaped from Jackson Prison and proceeded to another county where he and his companion forced a woman at knifepoint to accompany them to Detroit in her car. The defendant pled guilty to prison escape and later pled guilty to assault with intent to commit a felony. His motion to set aside the latter plea on double jeopardy grounds was denied and this Court affirmed, reasoning:

> In the present case, the first element of the *White* same transaction test, that the crimes "were committed in a continuous time sequence,"

may appear to be met because both offenses occurred on the same day. However, that fact alone does not make the offenses one long continuous transaction. *People v Martin,* [53 Mich App 321; 220 NW2d 186 (1974), rev'd in part on other grounds 398 Mich 303; 247 NW2d 303 (1976)]. Furthermore, the crime of prison escape was completed at the time that the defendant did "leave said prison without being discharged." MCLA 750.193; MSA 28.390.

The second element, that the crimes "display a single intent and goal," is not satisfied. The defendant could not have assaulted the victim with the same intent and goal that he had when escaping prison. The prison escape was a completed act. The assault was an independent act intended to allow the defendant to elude capture. As such, while the assault was made possible by the escape, the assault was a separate transaction. [62 Mich App 248.]

In the instant case, in our opinion, it cannot be said that defendant committed the two charged offenses by way of a single transaction or that the offenses comprised an "essentially unitary criminal episode." Defendant did not display the type of singular purpose evinced by the defendant in *White.* Defendant's goal in allegedly possessing the packages of marijuana found in his home was to have a supply of the substance ready at hand for distribution. As in *Charles Johnson,* the alleged possession offense was complete before the other crime charged—here, delivery to the informant— was committed or, quite probably, even contemplated. The delivery of the marijuana to the informant, on the other hand, evinces the independent goal of selling *that* marijuana to *that* individual. *Cuellar, supra.* As in *Martinez,* the record does not indicate a meaningful factual connection between the marijuana found in defendant's home and that

delivered to the informant, such as an agreement between defendant and the informant that the marijuana in the house would later be earmarked for or delivered to the informant.

Nor are we able to conclude that these facts demonstrate the type of continuous time sequence contemplated by the *White/Crampton* same transaction test. Defendant was charged with possession with intent to deliver certain marijuana and with delivery of certain other marijuana. The conduct constituting the alleged possession began when defendant obtained the marijuana and formed the intent to distribute it, and did not end until he was divested of possession by the police. In the interim, defendant sold other marijuana. On these facts, we believe that the most that can be said is that the charged offenses involved a *concurrent* time sequence. Defendant essentially sold some marijuana while allegedly warehousing other marijuana. Thus, the sequence of conduct in this case may be simultaneous, but it is not continuous. In this regard, *People v Fowlkes,* 130 Mich App 828; 345 NW2d 629 (1983), and *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), relied on by the trial court, are inapposite since they address the multiple punishment rather than successive prosecution form of double jeopardy.

As *Charles Johnson* and *Jackson* demonstrate, one criminal offense may evolve from another criminal offense and still constitute two separate transactions under the Double Jeopardy Clause. We are of the opinion that these facts present such a case. Although defendant's delivery of the marijuana to the informant may have stemmed from his alleged possession of marijuana with the intent to deliver, in the sense that the delivered marijuana may have originally been part of the cache

stored in his home, the charged offenses simply were not so intertwined as to amount to a single criminal episode requiring a single trial.

Reversed and remanded.