*597 Cavanagh, J.
(dissenting). Today’s majority overrules People v White, 390 Mich 245; 212 NW2d 222 (1973), which held that the “same transaction” test should be used to determine if serial prosecutions violate our Constitution’s double jeopardy provision.[1] The majority now holds that courts must use the “same elements” test to determine when our Constitution’s prohibition against double jeopardy is violated. As was so eloquently stated in White, supra at 258, “It is our duty to assure to all who come before us the rights guaranteed under the Constitution of the United States and the Constitution of the State of Michigan.” Because I believe today’s majority fails to honor that duty in its decision to overrule White, I must respectfully dissent.
This Court’s decision to overrule White is grounded in the improper belief that the same elements test is the sole test used by the United States Supreme Court to protect citizens’ constitutional rights under the United States Constitution.[2] However, the same elements test, also referred to as the Blockburger test,[3] is not as entrenched in federal jurisprudence as the majority claims. “The Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense.” Brown v Ohio, 432 US 161, 166 n 6; 97 S Ct 2221; 53 L Ed 2d 187 (1977). “It has long been understood that separate *598 statutory crimes need not be identical—either in constituent elements or in actual proof—in order to be the same within the meaning of the constitutional prohibition.” Id. at 164.
In numerous cases, the United States Supreme Court has used other tests because it recognized that the same elements test is not an adequate safeguard to protect a citizen’s constitutional right against double jeopardy. In Ashe v Swenson, 397 US 436, 443-444, 447; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the United States Supreme Court held that the double jeopardy clause includes a collateral estoppel guarantee. In Ball v United States, 470 US 856, 857, 865, 866 (appendix); 105 S Ct 1668; 84 L Ed 2d 740 (1985), the United States Supreme Court recognized the Block-burger test, see n 3, yet determined a defendant could not be convicted of two offenses that stemmed from the same conduct, even though the offenses had different elements, because it was contrary to congressional intent. As stated in Albernaz v United States, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981), “The Blockburger test is a ‘rule of statutory construction,’ and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.”
Further, in In re Nielsen, 131 US 176, 187; 9 S Ct 672; 33 L Ed 118 (1889), a conviction for unlawful cohabitation precluded a subsequent charge of adultery because the incident occurred during the same two and a half year period as that for unlawful cohabitation. In Harris v Oklahoma, 433 US 682, 682-683; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), the defendant was convicted of felony murder after a store clerk *599 was killed during a robbery. After the defendant’s conviction for felony murder, the defendant was tried and convicted of robbery with firearms. The United States Supreme Court held that when “conviction of a greater crime . . . cannot be had without conviction of the lesser crime, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one.” Id. at 682. And in Brown, supra at 166, double jeopardy barred a subsequent prosecution for a greater offense even though the greater offense required proof of an additional element.[4]
The majority relegates the purpose of the Double Jeopardy Clause to a footnote, ante at 575 n 10; however, it is worth stating clearly that the purpose of the constitutional protection against double jeopardy is “to limit the state to having generally only one attempt at obtaining a conviction. Otherwise, the state could repeatedly prosecute persons for the same crime, transforming the trial process itself into a punishment and effectively punishing the accused without his having been adjudged guilty of an offense meriting punishment.” People v Dawson, 431 Mich 234, 250-251; 427 NW2d 886 (1988). Likewise, the United States Supreme Court stated that
*600 the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [Green v United States, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957).]
Our Double Jeopardy Clause is meant to protect our citizens from government zeal and overreaching; yet, the same elements test permits multiple prosecutions stemming from a single incident. “The same-elements test is an inadequate safeguard, for it leaves the constitutional guarantee at the mercy of a legislature’s decision to modify statutory definitions.” United States v Dixon, 509 US 688, 735; 113 S Ct 2849; 125 L Ed 2d 556 (1993) (White, J., dissenting). Notably, a technical comparison of the elements is neither constitutionally sound nor easy to apply. While the same elements test appears at first glance to be easy to apply, this Court’s recent struggle with whether materiality is an element of perjury in People v Lively, 468 Mich 945; 664 NW2d 223 (2003) (order granting leave), provides proof to the contrary. “As with many aspects of statutory construction, determination of what elements constitute a crime often is subject to dispute.” United States v Gaudin, 515 US 506, 525; 115 S Ct 2310; 132 L Ed 2d 444 (1995) (Rehnquist, C.J., concurring). If our courts struggle with the basics of determining what elements constitute a crime, it is inevitable that these struggles will continue when courts attempt to determine whether two crimes contain the same elements.
In contrast to the same elements test, the same transaction test requires the government to join at *601 one trial all the charges against a defendant arising out of a continuous time sequence, when the offenses shared a single intent and goal. White, supra at 254. Although a single transaction can give rise to distinct offenses, the charges must be joined at one trial. However, the same transaction test also offers flexibility for certain circumstances, such as when facts necessary to sustain a charge have not yet occurred or have not been discovered despite due diligence. People v Harding, 443 Mich 693, 702; 506 NW2d 482 (1993).
The same transaction test best protects Michigan citizens against government harassment and overreaching, while the same elements test increases the potential for government abuse. To this end, the majority has helpfully provided cases that illustrate that the government will expend resources and repeatedly prosecute citizens for crimes that stem from one incident and that could have been consolidated at one trial. In People v Parrow, 80 Mich 567, 568; 45 NW 514 (1890), the defendant was acquitted of burglary with intent to commit the crime of larceny and then the government chose to charge the defendant with larceny for stealing the same money as in the alleged burglary. And in People v Ochotski, 115 Mich 601, 602-603; 73 NW 889 (1898), the defendant was charged and convicted of assaulting a woman after he was acquitted of assaulting her husband during the same incident.
In this case, defendant pleaded guilty of second-degree home invasion, MCL 750.110a(3). She was subsequently charged with receiving and concealing stolen firearms, MCL 750.535b. Notably, defendant was the driver in the home invasion during which the *602 guns were stolen. She also admitted that the guns concealed were the ones stolen during the home invasion. Defendant’s actions represent a single intent and goal, as well as the events being part of a continuous time sequence. Almost universally, inherent in stealing an item is receiving it and concealing it, if only for a brief time. Defendant’s intent when she participated in the home invasion was to successfully steal the guns. Defendant’s intent when she participated in the concealing of the guns was to successfully steal the guns. The subsequent prosecution for receiving and concealing stolen firearms violated defendant’s double jeopardy rights.
Government maneuvering and manipulation should not be used to evade the protections granted our citizens by the Double Jeopardy Clause. Protecting our citizens’ constitutional rights is a constitutional obligation, not merely a moral one. The same transaction test best meets our Constitution’s mandate against twice putting a person in jeopardy for the same offense. Without double jeopardy protections, our citizens are at risk of facing multiple prosecutions by the government, regardless of a prior acquittal. “Further, because the state can devote its resources to improving the presentation of its case, the probability of a conviction may increase with each retrial.” Dawson, supra at 251.
Accordingly, I respectfully dissent and would reverse the decision of the Court of Appeals. After pleading guilty of second-degree home invasion, defendant’s subsequent prosecution for receiving and concealing stolen firearms violated her double jeopardy rights.
Kelly, J., concurred with Cavanagh, J.

 “No person shall be subject for the same offense to be twice put in jeopardy.” Const 1963, art 1, § 15.

 Federal jurisprudence is relevant to our analysis because of the majority’s argument that the ratiñers of our Constitution wanted Michigan’s double jeopardy protection to be parallel with that conferred by the federal constitution.

 Blockburger v United States, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

 The majority states that many of these “very cases” were addressed “point by point” in United States v Dixon, 509 US 688; 113 S Ct 2849; 125 L Ed 2d 556 (1993). That is correct; however, cases addressed in Dixon were also addressed, and I believe more convincingly, in the Dixon dissent. Further, the majority notes that certain cases I cited addressed multiple punishment claims, and “we are simply not addressing in this case the multiple punishments strand of the double jeopardy protection.” Ante at 595 n 30. While this case does not deal with a multiple punishment claim, Elockburger itself was a multiple punishment case and Dixon, supra at 704, stated that the term “same offense” means the same whether dealing with successive prosecution or multiple punishment claims.