CRAMPTON v 54-A DISTRICT JUDGE

PEOPLE v HUDGINS

PEOPLE v ALLEN

PEOPLE v JONES

Docket Nos. 56073, 56286, 56298, 56446. Submitted May 8, 1975 (Calendar Nos. 13–16).—Decided August 27, 1976.

Clyde Crampton was arrested in Lansing and charged with driving under the influence of liquor, MCLA 257.625; MSA 9.2325. The complaint alleging that charge was filed in district court and subsequently a separate complaint, based on the same arrest, charging failure to display a valid registration on demand, MCLA 257.223; MSA 9.1923, was filed in the district court. Defendant entered a plea of guilty to the charge of failure to display registration in the 54-A District Court, James R. Giddings, J. Later, defendant moved to quash the charge of driving under the influence of liquor, arguing that the same transaction rationale barred any further prosecution. The district court, Terrance A. Clem, J., denied relief and the Ingham Circuit Court, Jack W. Warren, J., affirmed. The Court of Appeals, Lesinski, C. J., and J. H. Gillis and V. J. Brennan, JJ., denied leave to appeal (Docket No. 20100). Plaintiff Crampton appeals (Docket No. 56073).

Royce D. Hudgins was charged with three offenses, all detected at one time: making an improper U-turn, Detroit ordinances § 38-5-7; driving an automobile emitting excessive smoke, Detroit ordinances § 38-10-11; and carrying a pistol in a motor vehicle without a license, MCLA 750.227; MSA 28.424. Before the scheduled date of his trial on the two ordinance charges, defendant entered a plea of guilty in the Traffic and Ordinance Division of Recorder's Court to the charges of improper U-turn and excessive exhaust smoke. He was convicted and fined by the court. The same day, he moved in recorder's court to dismiss the pistol charge, arguing that the same transaction rule barred any further prosecution. The trial court, Robert L.

REFERENCE FOR POINTS IN HEADNOTES

[1–15] 21 Am Jur 2d, Criminal Law § 182 et seq.

Evans, J., dismissed the charge. The people appeal on leave granted by the Supreme Court (Docket No. 56286).

James Allen, Jr., was charged with driving under the influence of liquor, MCLA 257.625; MSA 9.2325; felonious assault, MCLA 750.82; MSA 28.277; and carrying a concealed weapon, MCLA 750.227; MSA 28.424. All of the offenses were alleged to have occurred at the scene of an automobile accident in which defendant was involved. Defendant was tried and convicted in the Traffic and Ordinance Division of Recorder's Court on the charge of driving under the influence of liquor. Later, he moved in recorder's court for dismissal of the two remaining charges. The trial court, Robert L. Evans, J., found that the same transaction test applied and dismissed the charges. The people appeal on leave granted by the Supreme Court (Docket No. 56298).

Percy F. Jones was arrested in a raid of an alleged "blind pig" in the City of Detroit and three separate charges were filed against him: disorderly conduct, Detroit ordinances § 39-1-10; possession of heroin, MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a); and possession of marijuana, MCLA 335.341(4)(d); MSA 18.1070(41)(d). Defendant was found guilty by a referee in the Traffic and Ordinance Division of Recorder's Court on the disorderly conduct charge. Subsequently, defendant's motion to dismiss the two remaining charges on the ground that the same transaction test applied was granted by the trial court, Robert L. Evans, J. The people appeal on leave granted by the Supreme Court (Docket No. 56446). *Held:*

1. The same transaction test was adopted as the proper standard to be applied in examining a claim of double jeopardy with the objective of ensuring that a criminal defendant receives meaningful protection from prosecutorial harassment. The definition of "same transaction" as those crimes committed in a continuous time sequence which display a single intent or goal is not sufficient in cases where criminal intent is not an element of some or all of the offenses.

2. Crimes arise out of the same transaction where (1) criminal intent is an element of the crimes and they are committed in a continuous time sequence and display a single criminal intent or objective, or (2) one or more of the offenses does not involve criminal intent, the offenses are part of the same criminal episode, and the offenses involve laws intended to prevent the same or similar harm or evil, not a substantially different, or a very different kind of, harm or evil.

3. These cases involved either traffic or liquor law violations which do not require criminal intent as an element, so the

second part of the same transaction definition applies. There was not a sufficient link between the offenses to establish that they arose out of the same transaction where the only relationship between offenses was that the defendants' arrest for an offense provided the occasion for the discovery of other offenses. The harm or evil intended to be prevented by the driving under the influence of liquor law and the law requiring ability to display a valid registration are substantially different. The harm or evil intended to be prevented by the improper U-turn law, the excessive smoke emission law and the law prohibiting the carrying of a pistol in a motor vehicle are substantially different. The ordinance prohibiting disorderly conduct was intended to prevent a substantially different harm or evil from the laws prohibiting possession of marijuana or heroin. The harm or evil intended to be prevented by the DUIL law and the law prohibiting carrying a concealed weapon are substantially different. The DUIL and felonious assault laws were intended to prevent substantially different kinds of harm or evil. In none of the four cases should subsequent prosecutions be barred.

Justice Levin, with whom Chief Justice Kavanagh concurred, reached the same result in a separate opinion:

1. In each case the more serious charge was not part of the same criminal transaction and, hence, prosecution is not barred by the Double Jeopardy Clause. Offenses arise out of the same criminal transaction where there is a substantial connection in criminality between the offenses committed. There is no substantial connection in criminality between the traffic or liquor law offenses of which the defendants were convicted and the other offenses they seek to have dismissed. The arrests of Crampton, Hudgins and Allen for traffic offenses were only the occasions for discovering the other offenses charged. Similarly, Jones' arrest for being in a "blind pig" was only the occasion for discovering his possession of narcotics. The only factor connecting one offense with the other is that one was discovered in consequence of apprehension for the other.

2. Criminal intent is not an element of traffic or liquor law violation, but *mens rea* must be shown to establish the other offenses. The interests secured by safety and revenue laws, the harm caused by their violation, is of a nature significantly different than in the case of laws designed to protect persons and property from predatory behavior.

They would also hold that where necessary to accommodate the constitutional right not to be placed twice in jeopardy for the same offense and the laws establishing jurisdiction of the courts, a prosecutor may file an information in circuit court or

Recorder's Court of Detroit for all offenses, whether arising under state or local law and whether misdemeanors or felonies, which are part of the same transaction.

Justice Coleman concurred in the results reached by the other two opinions, but would achieve the objective of *White,* to curb prosecutorial harassment of defendants by eliminating *seriatim* prosecutions, through an amendment to the court rules mandating joinder of related offenses. Because mandatory joinder does not rise to the dignity of a rule of constitutional law, the Court could carve out exceptions to the rule and permit severance of counts for trial without arbitrarily determining that a rule of constitutional law is inapplicable to certain crimes.

Affirmed as to Crampton. Reversed and remanded as to Hudgins, Allen and Jones.

## OPINION OF THE COURT

1. CRIMINAL LAW—SAME TRANSACTION RULE—PURPOSE.

The rule requiring joinder at one trial of all criminal charges arising out of the same criminal transaction was adopted as the proper standard to be applied in examining a claim of double jeopardy with the primary objective of ensuring the protection of a defendant from prosecutorial harassment, and the rule should be interpreted with that objective in mind.

2. CRIMINAL LAW—SAME TRANSACTION RULE—DEFINITION.

Criminal charges against a defendant arise out of the same transaction and must be joined at one trial where (1) the crimes are ones of criminal intent, are committed in a continuous time sequence, and display a single criminal intent or objective, or (2) if they are not all crimes of criminal intent, they are part of the same criminal episode and violate laws intended to prevent the same or similar harm or evil, not a substantially different kind of harm or evil.

3. CRIMINAL LAW—SAME TRANSACTION RULE—SUFFICIENCY OF RELATIONSHIP.

There was not a sufficient link between certain criminal charges against a defendant to establish that they arose out of the same transaction and to require joinder at one trial where the only relationship between the charged offenses was that the defendant's arrest for one offense provided the occasion for the discovery of the others.

4. CRIMINAL LAW—SAME TRANSACTION RULE—DRUNK DRIVING—FAILURE TO DISPLAY REGISTRATION.

Charges of the offenses of driving under the influence of intoxicating liquor and failure to display a valid registration on demand do not arise from the same transaction which would require joining the charges at one trial; the former statute protects the traveling public against danger from drivers not in full control of themselves, and the latter protects against the theft of automobiles (MCL 257.223, 257.625; MSA 9.1923, 9.2325).

5. CRIMINAL LAW—SAME TRANSACTION RULE—CARRYING A PISTOL IN A MOTOR VEHICLE—TRAFFIC OFFENSE.

Charges of the traffic offenses of making an improper U-turn and driving an automobile emitting excessive smoke, and the crime of carrying a pistol in a motor vehicle do not arise from the same transaction which would require joining the charges at one trial; the first traffic ordinance promotes the flow of traffic and safety conditions on certain roadways, the second prevents air pollution, and the criminal statute promotes public peace and safety (MCL 750.227; MSA 28.424; Detroit ordinances, §§ 38-5-7, 38-10-11).

6. CRIMINAL LAW—SAME TRANSACTION RULE—POSSESSION OF HEROIN —POSSESSION OF MARIJUANA—DISORDERLY CONDUCT.

Charges of possession of heroin and possession of marijuana and the ordinance violation of disorderly conduct do not arise from the same transaction which would require joining the charges at one trial; the criminal statute prohibits the use of physically harmful substances, and the ordinance prevents unlawful civil disturbance (MCL 335.341[4][a], 335.341[4][d]; MSA 18.1070[41][4][a], 18.1070[41][4][d]; Detroit ordinance, § 39-1-10).

7. CRIMINAL LAW—SAME TRANSACTION RULE—DRUNK DRIVING.

Charges of driving under the influence of intoxicating liquor and carrying a concealed weapon do not arise from the same transaction which would require joining the charges at one trial; the former statute protects the traveling public against danger from drivers not in full control of themselves, and the latter promotes public peace and safety (MCL 257.625, 750.227; MSA 9.2325, 28.424).

8. CRIMINAL LAW—SAME TRANSACTION RULE—DRUNK DRIVING—ASSAULT.

Charges of driving under the influence of liquor and felonious assault did not arise out of the same criminal transaction which would require joining the charges at one trial where it

was alleged that the defendant, while driving under the influence of liquor, was involved in an accident with another driver and after the accident pointed a weapon at him and threatened him; the statute on driving under the influence of liquor protects the traveling public against drivers not in full control of themselves, and the statute punishing felonious assault protects the public from physical violence and harm (MCL 257.625, 750.82; MSA 9.2325, 28.277).

CONCURRING OPINION

KAVANAGH, C. J., and LEVIN, J.

9. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION.

*Prosecution of a greater offense is not barred under the Double Jeopardy Clause by conviction of a lesser offense unless both offenses were part of the same criminal transaction (US Const, Am V; Const 1963, art 1, § 15).*

10. CRIMINAL LAW—MULTIPLE CRIMES—SAME TRANSACTION.

*Multiple crimes committed by a defendant were all part of a single criminal transaction where the crimes were committed in a continuous time sequence and displayed a single intent and goal.*

11. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION.

*The primary objective of the same transaction test, which requires the prosecution to join at one trial all the charges against a defendant arising out of a single criminal transaction, is to insure that a criminal defendant receives meaningful protection under the Double Jeopardy Clause; if actual situations should arise in which application of the same transaction test would not serve that objective, the Court will consider the adoption of limited exceptions to the test.*

12. CRIMINAL LAW—MULTIPLE CRIMES—SAME TRANSACTION.

*Multiple offenses committed by a defendant were part of the same criminal transaction where there was a substantial connection in criminality between the offenses committed—robbery of a bar which escalated to kidnapping of the barmaid and culminated in her rape and murder—and a continuous time sequence between the offenses.*

13. CRIMINAL LAW—MULTIPLE CRIMES—SAME TRANSACTION—CONSTITUTIONAL LAW—DOUBLE JEOPARDY.

   *There was no substantial connection in criminality between traffic and liquor law offenses and other charged offenses (failure to display a valid vehicle registration on demand, carrying a pistol in a motor vehicle without a license, carrying a concealed weapon, possession of controlled substances, and felonious assault with a handgun) where the only factor connecting one offense with another is that the other offenses were discovered in consequence of apprehension of a defendant for the traffic and liquor law offenses; each is a separate transaction and the prosecution need not join the offenses in a single trial to ensure protection of a defendant's rights under the Double Jeopardy Clause (US Const, Am V; Const 1963, art 1, § 15).*

14. CRIMINAL LAW—COURTS—JURISDICTION—RECORDER'S COURT OF DETROIT—CIRCUIT COURTS—DISTRICT COURTS.

   *An information may be filed in circuit court or in Recorder's Court of Detroit for all offenses, whether arising under state or local law and whether misdemeanors or felonies, which are part of the same transaction where necessary to an accommodation of the constitutional right not to be placed twice in jeopardy for the same offense and the provisions of law establishing jurisdiction of the district court and the Recorder's Court of the City of Detroit, Traffic and Ordinance Division (US Const, Am V; Const 1963, art 1, § 15; MCL 600.8311, 725.18; MSA 27A.8311, 27.3958).*

OPINION CONCURRING IN RESULT

COLEMAN, J.

15. CRIMINAL LAW—DOUBLE JEOPARDY—COMPULSORY JOINDER—COURT RULES.

   *A compulsory joinder court rule could be adopted to achieve the objective of curbing prosecutorial harassment of defendants by eliminating* seriatim *prosecutions for different offenses committed during a course of criminality without arbitrarily deciding that a rule of constitutional law (double jeopardy) applies to some crimes and no to others.*

*Church, Wyble, Kritselis & Tesseris* (by *Thomas H. Hay),* for plaintiff Crampton.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodel-*

*ler,* Prosecuting Attorney, and *Lawrence J. Emery,* Assistant Prosecuting Attorney, for defendant district judge.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Dennis H. Benson* and *Larry Baron),* for defendants Hudgins, Allen, and Jones.

Williams, J. In *People v White,* 390 Mich 245, 255; 212 NW2d 222 (1973), this Court, following the lead of other jurisdictions,[1] adopted the "same transaction" test as the proper standard to be applied in examining a claim of double jeopardy.[2] We adopted this test because it "provides the only meaningful approach to the constitutional protection against being placed twice in jeopardy", *supra,* 257–258.

The cases now before this Court require us to examine the parameters of the same transaction

---

[1] Jurisdictions in which the same transaction test has been adopted by court decision include: Missouri, *State v Richardson,* 460 SW2d 537 (Mo, 1970); Tennessee, *Walton v State,* 448 SW2d 690 (Tenn Crim App, 1969); Georgia, *Burnam v State,* 2 Ga App 395; 58 SE 683 (1907); North Carolina, *State v Bell,* 205 NC 225; 171 SE 50 (1933); Pennsylvania, *Commonwealth v Campana,* 452 Pa 233; 304 A2d 432 (1973).

Jurisdictions achieving same result via statute include: Minnesota, *see State v Corning,* 289 Minn 382; 184 NW2d 603 (1971); California, *see In re Henry,* 65 Cal 2d 330; 54 Cal Rptr 633; 420 P2d 97 (1966); New York, NY Crim Pro L § 40.10(2) (McKinney 1971).

[2] The Michigan Double Jeopardy Clause, which is substantially identical to the Double Jeopardy Clause contained in the Fifth Amendment to the United States Constitution, provides in pertinent part:

"No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

test. This is by no means an easy task.[3] As Justice Brennan admitted in calling for the adoption of the same transaction test, "the phrase 'same transaction' is not self-defining". *Ashe v Swenson,* 397 US 436, 454, fn 8; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., concurring). However, the task can be accomplished in such a way that the constitutional rights of the criminal defendant will be protected without reaching anomalous or absurd results.

In this opinion we will explore the purposes behind the adoption of the same transaction test, examine how other jurisdictions have developed the concept of the same transaction, set forth criteria for determining whether crimes arise out of the same transaction and apply that standard to the facts of the four cases before us.

## I—PURPOSE BEHIND ADOPTION OF SAME TRANSACTION TEST

In seeking to establish the proper parameters of the same transaction test we must be mindful of the purposes behind adopting the rule. We expressed the view in *White* that the use of the same transaction test would promote both "the best interests of justice and sound judicial administration". 390 Mich 258. Indeed, economical and expeditious administration of justice will result from use of this test, but as we emphasized in *White,* "our primary objective in adopting the same transaction test is to ensure that a criminal defendant

[3] As the Supreme Court of Minnesota noted in *State v Johnson* 273 Minn 394; 141 NW2d 517, 524–525 (1966):

"While the objectives are clear enough, the difficulty lies in formulating a test for determining whether each violation charged resulted from a single behavioral incident. * * * [A]ny test must give consideration to the vast number of conceivable situations which are likely to arise."

receives meaningful protection under the double jeopardy clause". 390 Mich 258, fn 6.[4] We observed:

"A far more basic reason for adopting the same transaction test is to prevent harassment of a defendant. The joining of all charges arising out of the same criminal episode at one trial ' * * * will enable a defendant to consider the matter closed and save the costs of redundant litigation.' It will also help ' * * * to equalize the adversary capabilities of grossly unequal litigants' and prevent prosecutorial sentence shopping. 'In doing so, it recognizes that the prohibition of double jeopardy is for the defendant's protection.' 41 Mich App 370, 378; 200 NW2d 326, 330 (1972)." 390 Mich 258–259.

It is the protection of the defendant from the possibility of prosecutorial harassment which was foremost in our minds when we adopted the same transaction test[5] and this is the principle which must be kept in mind as we give substance to the phrase, the same transaction.

[4] "The Double Jeopardy Clause is a guarantee 'that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity * * * .' *Green v United States,* 355 US 184, 187 [78 S Ct 221; 2 L Ed 2d 199; 61 ALR2d 1119] (1957)." Concurring opinion of Justice Brennan in *Ashe v Swenson,* 397 US 436, 450; 90 S Ct 1189, 1197–1198; 25 L Ed 2d 469, 479 (1970).

[5] In *White* we did recognize an exception to the same transaction test " 'where a crime is not completed or not discovered despite the due diligence on the part of the police, until after the commencement of a prosecution for other crimes arising from the same transaction * * * '. *Ashe v Swenson,* 397 US 436, 453 n 7; 90 S Ct 1189, 1199; 25 L Ed 2d 469, 481 (1970) (Brennan, J., concurring)."

Whether an exception to the same transaction test should be recognized in those cases in which the prosecutor does not know or through due diligence could not discover that other *charges* against the defendant exist is a question that deserves our careful consideration. However, since we have ruled in this opinion that none of the instant appeals fall within the same transaction test (see part IV of this opinion), it is a question we need not answer today.

## II—SAME TRANSACTION—INTENT CRIMES— *White* APPLIES

*White* dealt with a series of offenses all of which involved crimes where criminal intent was an element of the crime. In *White,* this Court said:

"[T]here can be no doubt that the three crimes committed by defendant were all part of a single criminal transaction. The *crimes were committed in a continuous time sequence and display a single intent and goal* —sexual intercourse with complainant." (Emphasis added.) 390 Mich 245, 259.[6]

This was the criterion that case established:

"a continuous time sequence and display [of] a single intent and goal."

This criterion provides a generally workable test to apply in most instances to determine whether a single transaction exists vis-à-vis double jeopardy if all the activities involve crimes where *criminal intent* is an element. We accept that as the criterion which must be applied in all cases where only *intent* crimes are in question.

## III—SAME TRANSACTION—NO-INTENT CRIMES

Where a series of offenses involve either no intent crimes or intent and no-intent crimes, the criterion in *White* does not provide a wholly workable test. The cases with which this opinion deals involve such fact situations. Our task therefore is to formulate an appropriate criterion to test them in the spirit of *White.*

---

[6] Defendant White had been charged with kidnapping, felonious assault and rape. 390 Mich 250–251.

The American Law Institute Model Penal Code
seeks to prevent successive prosecutions where
offenses are part of the same criminal episode.
Section 1.07(2) (Proposed Official Draft, 1962) pro-
vides in pertinent part:

"A defendant shall not be subject to separate trials
for multiple offenses based on the same conduct or
arising from the same criminal episode, if such offenses
are known to the appropriate prosecuting officer at the
time of the commencement of the first trial and are
within the jurisdiction of a single court."

In *Commonwealth v Campana,* 452 Pa 233, 253;
304 A2d 432 (1973), the Pennsylvania Supreme
Court, citing the Model Penal Code with approval,
held that:

"The Double Jeopardy Clause requires a prosecutor to
bring, in a single proceeding, all known charges against
a defendant arising from a 'single criminal episode.'"
(Footnote omitted.)

The *White* quotation used above in part I makes
use of the term "criminal episode" as follows:

"The joining of all charges arising out of the same
criminal episode ' * * * will enable a defendant to
consider the matter closed and save the cost of redun-
dant litigation.'" 290 Mich 259.

Utilization of this term therefore will comport
with language already employed in *White.*

Both Hawaii and New York have an approach to
the problem at hand that suggests another useful
criterion. In *State v Ahuna,* 52 Hawaii 321, 326;
474 P2d 704, 707 (1970), the Supreme Court of
Hawaii held:

"We think that a satisfactory approach to the problem is set forth in § 111 of the proposed Hawaii Penal Code 1970. Under the approach a former prosecution, although it has been for a violation of a different statutory provision, will bar a subsequent prosecution if the subsequent prosecution is for an offense based on the same conduct, unless the offense 'requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil.' "

A New York criminal statute likewise provides that subsequent prosecutions will not be barred where "the offenses * * * [contain] an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil". NY Crim Pro L § 40.20(2)(b) (McKinney 1971).[7]

A common criterion in both these jurisdictions is that the same transaction rule applied where the offenses involve laws intended to prevent the same or similar harm or evil, not "a substantially different harm or evil" (Hawaii), or "very different kinds of harm or evil" (New York).

Drawing upon these sources certain criteria for determining whether crimes arise out of the same transaction can be set forth.

1) Where criminal intent is required in the offenses involved, the criterion set forth in *White*

---

[7] *See also In re Martinis v Supreme Court of New York,* 15 NY2d 240, 247; 206 NE2d 165, 167; 258 NYS2d 65, 68 (1965).

"It has long been recognized that crimes separate in nature, although arising out of the same transaction, may be defined and convictions thereon sustained without exposing defendant to double jeopardy *(People v Snyder,* 214 App Div 742; 209 NYS 898 [1925], *aff'd* 241 NY 81; 148 NE 796 [1925]; *People v Skarczewski,* 287 NY 826; 41 NE2d 99 [1942]; *People v Di Lapo,* 14 NY2d 170; 250 NYS2d 261; 199 NE2d 361 [1964])."

applies: "continuous time sequence and display [of] a single intent and goal."[8]

2) Where one or more of the offenses does not involve criminal intent, the criterion is whether the offenses are part of the same criminal episode, and whether the offenses involve laws intended to prevent the same or similar harm or evil, not a substantially different, or a very different kind of, harm or evil.[9]

The above criteria do not purport to be all-inclusive. Criteria could no doubt be fashioned to encompass a greater number of fact situations and perhaps offer more guidance and thereby promote to a greater degree the efficient administration of justice. However, we believe that the criteria set forth today are as broad as appropriate until we are called upon to consider further illustrative cases.

## IV—APPLICATION OF THE STANDARD

The task remains to determine whether the individual offenses involved in each of the four cases before us arise out of the same transaction. Each of the four cases include either traffic or liquor law violations. Such offenses do not require

---

[8] We agree with the Court of Appeals application of the *White* rationale in the following cases: *People v Rolston,* 51 Mich App 146; 214 NW2d 894 (1974); *People v Joines (On Remand),* 55 Mich App 334; 222 NW2d 230 (1974); *People v Davenport (On Remand),* 51 Mich App 484; 215 NW2d 702 (1974); *People v West,* 54 Mich App 527; 221 NW2d 179 (1974); *People v Martinez,* 58 Mich App 693; 228 NW2d 523 (1975); *People v Goans,* 59 Mich App 294; 229 NW2d 422 (1975); *People v Williams,* 61 Mich App 642; 233 NW2d 122 (1975); *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974); *People v Charles Johnson,* 62 Mich App 240; 233 NW2d 246 (1975).

[9] Defendants Hudgins, Jones, and Allen argue that the same transaction test is applicable where crimes are connected by a continuous time sequence *or* a common intent or goal. Such a standard is far too broad and would not best serve the purposes for which the same transaction test was adopted.

criminal intent as an element and consequently, part (1) of the standard dealing with the singleness of the criminal intent or goal is inapplicable. The relevant portion of the standard for the cases before us is part (2).

## A. *Crampton*

On May 13, 1972, Clyde Crampton was arrested in Lansing and charged with driving under the influence of liquor, MCLA 257.625; MSA 9.2325. The complaint alleging that charge was filed in 54-A District Court on May 16, 1972. Subsequently, on June 28, a separate complaint charging Crampton with failure to display a valid registration on demand, MCLA 257.223; MSA 9.1923, was also filed in the district court. It is clear that this second complaint was also based on the May 13 arrest.

Faced with the two complaints, Mr. Crampton entered a guilty plea to the failure to display registration charge on October 25, 1972. On November 6, Crampton moved to quash the driving under the influence of liquor charge by arguing that the same transaction rationale barred any further prosecution. The district court held that the same transaction rule did not apply and the circuit court affirmed. The Court of Appeals denied leave and we granted leave on September 4, 1974, 392 Mich 793 (1974).

So *Crampton* poses the question whether the offenses of DUIL and inability to display a valid registration are part of the same transaction. Since they are not intent offenses we employ the second criterion "whether the offenses are part of the same criminal episode, and whether the offenses involve laws intended to prevent the same

or similar harm or evil, not a substantially different, or a very different kind of, harm or evil".

Were DUIL and inability to display a valid registration part of the same criminal episode? Nothing indicates these two offenses were part of the same criminal episode. DUIL appears merely to have been the occasion of exposing the inability to display a valid registration.

Furthermore, the harm or evil intended to be prevented by the DUIL law and the law requiring ability to display a valid registration are substantially different. The former is to protect the travelling public against danger from drivers not in full control of themselves. The latter is to protect against the theft of automobiles.

In short, the two offenses in *Crampton* are not part of the same transaction under our second criterion. The guilty plea to the failure to display a registration charge therefore was not a bar to suit on DUIL. The circuit court and the district court holdings were therefore correct.

## B. *Hudgins*

Royce Daniel Hudgins was arrested on October 5, 1973, and charged with three offenses all detected at one point in time: making an improper U-turn (Detroit ordinances, § 38-5-7); driving an automobile emitting excessive smoke (Detroit ordinances, § 38-10-11); and carrying a pistol in a motor vehicle without a license (MCLA 750.227; MSA 28.424). On April 25, 1974, before the scheduled date of his trial on the two ordinance charges, Mr. Hudgins entered a guilty plea in the Traffic and Ordinance Division of Recorder's Court to the improper U-turn and excessive exhaust smoke charges. He was convicted and fined by the court.

The same day, he moved in recorder's court to dismiss the gun charge, arguing that the same transaction rule barred any further prosecution. The trial judge agreed and dismissed the charge. The people appeal on bypass granted by this Court, 393 Mich 774 (1974).

*Hudgins* poses the question whether making an improper U-turn or operating a vehicle which emits excessive smoke and carrying a pistol in a motor vehicle are part of the same transaction. Since making an improper U-turn and operating a vehicle which emits excessive smoke are non-intent offenses, we again employ the second criterion of our test, *supra.*

First, we find that the only connection between the offenses of making an improper U-turn or excessive smoke emission and carrying a weapon was that the arrest resulting from the traffic violations was the occasion for discovering that Hudgins was carrying a pistol in the vehicle. As with *Crampton,* such a connection is not sufficient to establish that these offenses were part of the same criminal episode.

Secondly, the harm or evil intended to be prevented by the improper U-turn law, the excessive smoke emission law and the law prohibiting the carrying of weapons are substantially different. The law which prohibits improper U-turns is designed to promote the flow of traffic and safety conditions on certain designated roadways. The law prohibiting excessive smoke emission is designed to prevent polluting the air. Neither of these offenses involves laws intended to prevent the same or similar harm or evil sought to be prevented by the law prohibiting carrying a pistol in a motor vehicle, namely, to promote public peace and safety.

Therefore, the traffic offenses and the crime of carrying a pistol in a motor vehicle were not part of the same transaction under our second criterion. The trial court was in error in its ruling that the prosecution on the gun charge was barred by the same transaction rule.

## C. *Jones*

On February 17, 1974, Jones was arrested in a raid of an alleged "blind pig" in the City of Detroit. Three separate charges were filed against him: disorderly conduct (Detroit ordinances, § 39-1-10); possession of heroin (MCLA 335.341[4][a]; MSA 18.1070[41][4][a]); and possession of marijuana (MCLA 335.341[4][d]; MSA 18.1070 [41][4][d]). Approximately one month later, on March 15, 1974, Mr. Jones was found guilty by a referee in the Traffic and Ordinance Division of Recorder's Court on the disorderly conduct charge. A fine of $100 was imposed. Subsequently, on July 8, 1974, Mr. Jones moved to dismiss the two remaining charges by arguing that the same transaction test applied to this case. The trial judge granted the motion and the people appealed on bypass granted by this Court, 393 Mich 794 (1975).

Since disorderly conduct is a non-intent offense, we employ the second criterion of our test. First, as in the case of *Crampton* and *Hudgins,* the only connection between the disorderly conduct offense and the offenses of possession of heroin and marijuana was that the arrest for disorderly conduct was the occasion for the discovery of the additional possession of heroin and marijuana offenses. Such a connection is insufficient to establish that these offenses were part of the same criminal episode.

Secondly, the purpose of the disorderly conduct ordinance is to prevent unlawful civil disturbance

while the purpose of the laws prohibiting the possession of marijuana and heroin is to ultimately prohibit the use of physically harmful substances. Clearly, the ordinance prohibiting disorderly conduct was intended to prevent a substantially different harm or evil from the laws prohibiting possession of marijuana or heroin.

Therefore, the disorderly conduct offense and the crime of possession of marijuana and heroin were not part of the same transaction.

The trial court was in error in its ruling that prosecution of the possession of marijuana and heroin offenses was barred because of the same transaction rule.

## D. *Allen*

On September 29, 1973, James Allen, Jr., was arrested and charged with driving under the influence of liquor (MCLA 257.625; MSA 9.2325); felonious assault (MCLA 750.82; MSA 28.277), and carrying a concealed weapon (MCLA 750.227; MSA 28.424). All offenses are alleged to have occurred at the scene of an automobile accident in which Allen was involved. On November 26, 1973, Allen stood trial in the Traffic and Ordinance Division of Recorder's Court on the DUIL charge. He was convicted and sentenced by the court to 45 days at the Detroit House of Correction. On February 6, 1974, he moved in recorder's court for the dismissal of the two remaining charges. The trial judge found that the same transaction test applied and accordingly dismissed the charges. The people appeal on bypass granted by this Court, 393 Mich 775 (1974).

Since DUIL is a non-intent offense, we once again employ the second criterion of our test. In

this particular case we must apply the second criterion to (1) whether DUIL and carrying a concealed weapon are part of the same transaction and (2) whether DUIL and felonious assault are part of the same transaction.

As for DUIL and carrying a concealed weapon, we find that these two offenses are not part of the same transaction. First, we find that these offenses are not part of the same criminal episode. The only connection between DUIL and carrying a concealed weapon in this case is that arrest for the DUIL violation was the occasion for the discovery of the concealed weapon. As we have seen in *Crampton, Hudgins,* and *Jones,* this is not a sufficient link to establish that these offenses were part of the same criminal episode. Secondly, we find that the harm or evil intended to be prevented by the DUIL law and the law prohibiting the carrying of a concealed weapon are substantially different. The purpose of the DUIL law, as we noted in our discussion of *Crampton,* is to protect the travelling public against danger from drivers not in full control of themselves. The purpose of the law prohibiting carrying a concealed weapon is to promote public peace and safety. So, clearly, these offenses involve laws intended to prevent substantially different harm or evil. Therefore, the trial court was in error in ruling that DUIL and carrying a concealed weapon were part of the same transaction, thus barring prosecution on the concealed weapon offense.

As for DUIL and felonious assault, we find that these two offenses are also not part of the same transaction. It is a close question whether the DUIL offense and the felonious assault offense in this case were part of the same criminal episode. However, we need not make this determination

because, applying the other part of the test, we find that the DUIL and felonious assault laws were intended to prevent substantially different kinds of harm or evil. We have already reiterated the purpose of the DUIL law: to protect the travelling public against danger from drivers not in full control of themselves. The purpose of the felonious assault law is to protect the public from physical violence and harm. Therefore, the trial court was also in error when it concluded DUIL and felonious assault were part of the same transaction. Prosecution on the felonious assault charge was not barred under the same transaction rule.

## IV—CONCLUSION

Under the standard adopted today for determining whether offenses arose out of the same transaction, we conclude that in none of the four cases should subsequent prosecutions be barred. In *Crampton* the district court is affirmed. In *Hudgins, Allen* and *Jones,* recorder's court is reversed and those cases are remanded for trial.

COLEMAN and FITZGERALD, JJ., concurred with WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

LEVIN, J. *(concurring).* Crampton, Hudgins and Allen were arrested for traffic offenses. Jones was arrested for being in a blind pig, an offense related to the enforcement of the liquor laws. As a result of such arrests, the police discovered other law violations. In Crampton's case, a less serious offense was discovered: failure to display a valid

motor vehicle registration on demand.[1] In the other cases, more serious offenses were discovered:[2] in *Hudgins,* carrying a pistol in a motor vehicle without a license;[3] in *Jones,* possession of heroin[4] and marijuana;[5] in *Allen,* carrying a concealed weapon[6] and felonious assault[7] committed on the driver of another vehicle.

In each case the defendant was convicted of the less serious offense (either on his plea of guilty or following a trial) and sought dismissal of the more serious charge on the ground that both offenses were part of the same transaction *[People v White,* 390 Mich 245; 212 NW2d 222 (1973)] and, under the Double Jeopardy Clause, further prosecution is barred. Crampton was refused but the other defendants obtained the relief requested.

We granted by-pass.

We conclude in each case that the more serious charge was not part of the same transaction and, hence, prosecution is not barred by the Double Jeopardy Clause.

## I

In *People v White, supra,* the defendant was

---

[1] MCLA 257.223; MSA 9.1923.

[2] In *Crampton,* the more serious offense was driving under the influence of intoxicating liquor. MCLA 257.625; MSA 9.2325. In *Allen,* driving under the influence of intoxicating liquor was the less serious offense. In both *Crampton* and *Allen,* all the charges were for state law violations. In *Hudgins* and *Jones,* the less serious offenses were for violation of local ordinances: in *Hudgins,* making an improper U-turn and driving an automobile emitting excessive smoke (Detroit ordinances, § 38-5-7; 38-10-11); in *Jones,* for disorderly conduct in being in a blind pig. Detroit ordinance, § 39-1-10.

[3] MCLA 750.227; MSA 28.424.

[4] MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a).

[5] MCLA 335.341(4)(d); MSA 18.1070(41)(4)(d).

[6] MCLA 750.227; MSA 28.424.

[7] MCLA 750.82; MSA 28.277.

charged and convicted in circuit court of kidnapping a woman. He was separately charged and convicted in Detroit Recorder's Court of the offenses of rape and felonious assault of the woman.

In adopting the same transaction test, this Court said that both charges arose "out of the same criminal episode".

"There can be no doubt that the three crimes committed by defendant were all part of a single criminal transaction. The crimes were committed in a continuous time sequence and display a single intent and goal —sexual intercourse with the complainant." *People v White, supra,* p 259.

In a footnote, this Court said that the holding in *White* was limited "to the facts of the present case and to similar factual situations. * * * We emphasize that our primary objective in adopting the same transaction test is to insure that a criminal defendant receives meaningful protection under the double jeopardy clause. If actual situations should arise in which application of the same transaction test would not serve that objective, we will, in such a case, consider the adoption of limited exceptions to the same transaction test." *People v White, supra,* p 258, fn 6.

The Court of Appeals has applied the *White* rationale.

In *People v Rolston,* 51 Mich App 146; 214 NW2d 894 (1974), it was claimed that the defendant had robbed a bar and kidnapped, raped and murdered a barmaid. The Court of Appeals held that defendant's "acquittal of murder for the events arising out of this single criminal episode of robbery, kidnapping, rape and murder bars further prosecution by the state". Similarly, in *People v Joines (On Remand),* 55 Mich App 334; 222 NW2d

230 (1974), where the defendant was acquitted on a charge of kidnapping in Genesee County, the Court of Appeals reversed his subsequent Livingston County conviction of assault with intent to rape the victim of the kidnapping.

In *People v Davenport (On Remand),* 51 Mich App 484; 215 NW2d 702 (1974), and *People v West,* 54 Mich App 527, 530; 221 NW2d 179 (1974), following trial for disorderly conduct,[8] the defendants were convicted in circuit court of resisting arrest[9] *(Davenport)* and resisting and obstructing an officer in discharge of his duty[10] *(West).* In *West* the Court of Appeals said:

"As in *People v White, supra,* and *Davenport,* the two crimes with which defendant was charged were committed in a continuous time sequence, and plaintiff conceded in its brief and at oral argument that both charges arose out of the same transaction. * * * As in *Davenport,* the continuousness of the time sequence was obvious, and the unity of intent was also apparent —the defendant's refusal to submit to the police officers' authority."

In *People v Martinez,* 58 Mich App 693, 695; 228 NW2d 523 (1975), the defendant was convicted in one proceeding of possession of heroin on February 20, 1973 and in a separate proceeding of possession of heroin on March 1, 1973 as the result of transactions with the same police undercover agent. In affirming defendant's second conviction, the Court of Appeals said that while the deliveries of heroin were "to the same agent during the course of a continuous undercover investigation * * * these facts alone do not relate the events intimately

---

[8] Davenport was acquitted and West was convicted.

[9] MCLA 750.479; MSA 28.747.

[10] MCLA 750.479; MSA 28.747.

enough so as to characterize them as being a part of a single transaction under the test adopted in *People v White.* * * * [T]he record does not disclose any connection between [the two sales], such as an agreement after the first delivery to return for another sale."

In *People v Goans,* 59 Mich App 294, 297; 229 NW2d 422 (1975), the defendant was charged with felonious driving[11] and pled guilty to an added charge of failure to stop at a motor vehicle accident involving property damage.[12] The Court of Appeals held that a plea of guilty to one of two counts of a multi-count information does not preclude proceeding on other counts where the defendant enters a plea "with the full awareness that the prosecutor intends to proceed to trial on the other charge."[13] See *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974).

In *People v Williams,* 61 Mich App 642, 646; 233 NW2d 122 (1975), the defendant entered a plea of guilty to breaking and entering an occupied dwelling. Subsequently a person the defendant assaulted in the dwelling died of his injuries. The Court of Appeals, referring to an exception noted in footnote 6 of *White,* held "that since the crime with which defendant was here charged was not complete at the time of his earlier plea, his conviction is not barred by double jeopardy".

In *People v Jackson,* 391 Mich 323, 342; 217 NW2d 22 (1974), the defendant was arrested when

---

[11] MCLA 752.191; MSA 28.661.

[12] MCLA 257.618; MSA 9.2318.

[13] "We emphasize that the plea in this case was not a negotiated plea. A case where the defendant had pled guilty in the expectation that the other charge would be dismissed would present different considerations." *People v Goans,* 59 Mich App 294, 298; 229 NW2d 422 (1975).

he sought to use a credit card stolen, during the course of an attempt to rob a bar, from a person in the bar. This Court held that defendant's plea of guilty to the offense of attempted unlawful possession of a credit card[14] did not bar prosecution for assault with intent to rob being armed.[15] While the credit card charge was related to the attempted robbery charge in the sense that the credit card was stolen during that attempt, these were separate transactions:

"The Double Jeopardy Clause does not license subsequent offenses growing out of a theft or excuse the theft upon trial for one or another offense."

The *Jackson* analysis was adopted in *People v Charles Johnson,* 62 Mich App 240, 249; 233 NW2d 246 (1975), where, following a prison escape, the defendant forced a woman at knifepoint to accompany him while they drove in her automobile. The defendant was convicted of prison escape[16] and subsequently was convicted of assault with intent to commit a felony.[17] The Court of Appeals declared that "the double jeopardy clause does not license subsequent offenses growing out of a prison escape or excuse the escape upon trial of one or another offense".

II

In *White, Joines, Davenport* and *West,* there were both a continuous time sequence and a com-

---

[14] Jackson was arrested when he sought to use the credit card. He pled guilty to the reduced charge of attempted unlawful possession of a credit card.

[15] MCLA 750.89; MSA 28.284.

[16] MCLA 750.193; MSA 28.390.

[17] MCLA 750.87; MSA 28.282.

mon goal or intent—sexual intercourse with the victim *(White* and *Joines)* or refusal to submit to the police officers' authority *(Davenport* and *West).* In *Rolston,* a common goal or intent did not appear, but there was a substantial connection in criminality between the offenses committed. Robbery of the bar escalated to kidnapping of the barmaid and culminated in her rape and murder. There was but one criminal episode and all the offenses were part of the same criminal transaction.[18]

In contrast, in *Martinez,* the two sales of heroin were nine days apart and there was no connection between the sales. There were two criminal episodes, two separate criminal transactions. In *Jackson,* while the attempt to use the credit card was made possible by its theft during the attempt to rob the bar, the chain of criminality was broken when Jackson secured his departure from the bar; there was no substantial connection in criminality between the credit card offense and the offenses committed in the bar. Similarly, in *Johnson,* the defendant had made good his escape from Jackson State Prison and had traveled a considerable distance before he encountered the woman in Livingston County. While Johnson was still fleeing and the subsequent offense against the woman was made possible by the prison escape, the chain of criminality was broken some time between escape from the prison and his encounter with the woman; the police were not in hot pursuit, there was no continuing course of criminality such as victimization of a hostage which might connect the prison escape with the assault.

In the instant cases it does not appear there is a

---

[18] The felony-murder statute MCLA 750.316; MSA 28.548 recognizes a substantial connection in criminality between certain offenses against property and against persons.

substantial connection in criminality between the traffic or liquor law offenses of which the defendants were convicted and the other offenses they seek to have dismissed.[19]

Crampton's arrest for driving under the influence of intoxicating liquor was but the occasion for discovering his inability to display a valid registration,[20] as Hudgins' arrest for making an improper U-turn and excessive smoke emission was the occasion for discovering that he was carrying a pistol in a motor vehicle without a license, and Allen's arrest for driving under the influence of intoxicating liquor was the occasion for discovering that he was carrying a concealed weapon. Similarly, Jones' arrest for being in a blind pig was but the occasion for discovering his possession of heroin and marijuana; it does not appear that Jones acquired the heroin or the marijuana in the blind pig. There is no substantial connection in criminality between offenses where the only factor connecting one offense with the other is that one was discovered in consequence of apprehension for the other; each is a separate transaction.

Criminal intent is not an element of traffic or liquor law violation. However, conscious wrongdoing, *mens rea,* must be shown to establish the offenses of carrying a concealed weapon, possession of prohibited substances or felonious assault.[21]

---

[19] A defendant is in jeopardy whether the offense is a misdemeanor or a felony and, accordingly, a distinction cannot properly be drawn on the basis of characterization as a misdemeanor or a felony or on the basis of the length of potential imprisonment. *See Waller v Florida,* 397 US 387; 90 S Ct 1184; 25 L Ed 2d 435 (1970), *reh den* 398 US 914; 90 S Ct 1684; 26 L Ed 2d 79 (1970).

[20] Failure to produce a valid registration may reflect either an omission to register the vehicle or merely the failure to carry proof of registration. In either event the omission almost always precedes the driving. It is likely that one will drive carefully and in a state of sobriety without regard to whether in possession of evidence of registration.

[21] *See Morissette v United States,* 342 US 246; 72 S Ct 240; 96 L Ed

While safety and revenue measures are sometimes enforced with penal sanctions, the interests thereby secured, the harm caused by their violation, is of a nature significantly different than in the case of laws designed to protect persons and property from predatory behavior. We need not attempt to anticipate the myriad situations that may arise or fill in the ground between the two broad groups of offenses. In *Allen,* there is no substantial connection in criminality between drunk driving and felonious assault with a handgun; each is a separate transaction.

## III

In the necessary accommodation of the constitutional right not to be placed twice in jeopardy for the same offense and the provisions of statutory and local law[22] establishing the jurisdiction of the district court[23] and the Recorder's Court of the City of Detroit, Traffic and Ordinance Division,[24] preservation of the constitutional right without impairment of full enforcement of the laws requires that we hold that where necessary to accommodate those objectives a prosecutor may file an information in circuit court or recorder's court for all offenses, whether arising under state or local law

288 (1952).

[22] "A procedural rule allocating jurisdiction to try offenses between the several courts of the state must be subordinated to the defendant's constitutional right not to be put twice in jeopardy for the same offense. Cf *Gouled v United States,* 255 US 298, 313; 41 S Ct 261, 266; 65 L Ed 647, 654 (1921). This state's judicial power is, under our Constitution, vested in 'one court of justice'. Const 1963, art 6, § 1. While that power is divided among several courts, all the courts are parts of the same unified judicial system." *People v White,* 41 Mich App 370, 380; 200 NW2d 326 (1972).

[23] MCLA 600.8311; MSA 27A.8311.

[24] MCLA 725.18; MSA 27.3958.

and whether misdemeanors or felonies, which are part of the same transaction.[25]

In *Crampton* the district court is affirmed. In *Hudgins, Allen* and *Jones,* the recorder's court is reversed and those cases are remanded for trial.

KAVANAGH, C. J., concurred with LEVIN, J.

COLEMAN, J. *(concurring in result).* In an effort to alleviate an untenable situation, my colleagues have determined that the "same transaction" theory is inapplicable to certain situations and I agree with the results of both opinions.

Const 1963, art 1, § 15, provides:

"No person shall be subject for the same offense to be twice put in jeopardy."

In *People v White,* 390 Mich 245; 212 NW2d 222 (1973), and perpetuated in these cases, is the notion that any number of offenses *(e.g.,* rape, murder, kidnapping, robbery, etc.) in any number of jurisdictions may constitute one offense for which one cannot be placed twice in jeopardy. Therefore, all offenses must be contained in one information and set for trial in one jurisdiction.

Although my colleagues offer stop-gap solutions, they do not approach the fundamental problem. A sound constitutional protection has been strained

[25] In *People v Davenport (On Remand),* 51 Mich App 484, 487; 215 NW2d 702 (1974), the Court said:

"The conflict between the protection against double jeopardy and the allocation of jurisdiction among the district and circuit courts can be resolved by authorizing one of those courts, probably the circuit court, to try all charges, misdemeanors and felonies, in cases such as the instant one. However, a grant of such authority may be made only by the Legislature or the Supreme Court. Const 1963, art 6, § 13. Until either or both of those bodies act, prosecutors must, when confronted with a case such as this one, elect which charge to pursue."

beyond reasonable accommodation to jurispruden-
tial limits.

The wisdom of former Justice BRENNAN's dissent
in *White* is made more apparent by the resultant
legal snarls, some of which we now address. Jus-
tice BRENNAN said:

"My disagreement with the majority lies not in the
objective· of curbing prosecutorial discretion. *It is,
rather, with the logic of the route chosen to achieve the
objective.*

" *While I would support an amendment to the court
rules mandating joinder of related offenses,* I would
affirm the conviction at bar, the same having been
obtained in accordance with the procedural rules extant
at the time of the proceedings below." (Emphasis
added.)

It is the "route chosen to achieve the objective"
in *White* that has led to the rationalization
deemed necessary to avoid absurd results.

Ostensibly, the majority in *White* sought to curb
prosecutorial harrassment of defendants by elimi-
nating *seriatim* prosecutions. However, the Court
could have achieved this objective through an
amendment[1] to the court rules mandating joinder
of related offenses as Justice BRENNAN advocated
in his dissent.

Because mandatory joinder does not rise to the
dignity of a rule of constitutional law, the Court
could carve out exceptions to the rule and permit

---

[1] Const 1963, art 6, § 5 provides:

"The supreme court shall by general rules establish, modify, amend
and simplify the practice and procedure in all courts of this
state * * * ."

In *Buscaino v Rhodes,* 385 Mich 474, ·478–479; 189 NW2d 202
(1971), we stated:

"We have recognized that art 6, § 5, Michigan Constitution of 1963,
and its predecessors, must be liberally construed in order to aid in the
efficient administration of our judicial system."

severance of counts for trial without arbitrarily determining that a rule of constitutional law is inapplicable to certain crimes.

Every desirable practice need not rest upon further expansion of our elastic constitution which, if it can be interpreted to encompass everything, may eventually mean nothing.

I concur in affirming the district court in *Crampton.* I also concur in reversing recorder's court and remanding for trial in *Hudgins, Allen* and *Jones.*